## Goff v. Daniels.

(Decided June 7, 1918.)

### Appeal from Pike Circuit Court.

1. Elections—Schools and School Districts—Trustee—Contest—Vitiation by Fraud, Intimidation or Other Illegality—Effect.—An election affected by fraud, intimidation or other illegality should be set aside only when it can not be determined by any reasonable method on which side a majority of the legal votes were cast.

2. Elections—Schools and School Districts—Trustee—Vitiation by Fraud, Intimidation or Other Illegality—Effect.—Where, in a contested election for the office of school trustee, it appeared that

after eliminating all illegal votes and giving the contestant the benefit of one vote which it is claimed would have been cast for him had not the polls been closed too soon, the contestee received twenty-seven votes and the contestant twenty-three votes, the election should not have been set aside, but the contestee should have been declared elected.

ROSCOE VANOVER and CHILDRESS & CHILDRESS for appellant.

CLINE & STEELE for appellee. ·

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

At the election held August 6, 1916, G. J. Goff and J. P. Daniels were candidates for the office of school trustee in sub-district. No. 32, in Pike county. According to the returns, Goff received 32 votes and Daniels 30 votes, and Goff was awarded the certificate of election.

Daniels contested the election on the ground that Mary Goff, Sarah Kendrick, Almeda Billiter, Rebecca Blackburn, Lydia Holloway, Susie Justice, Sarah Holloway, Julia Ann Holloway, Hattie Holloway, Lydia Kendrick and Virgie Blackburn, who voted for Goff, were females and could not read and write; that Charles Billiter, who voted for Goff, was a non-resident of the district, and that Nannie Justice, who also voted for Goff, was an infant. The contestant further alleged that Eliza Smith, who would have voted for him, was prevented from voting by the officers of the election closing the polls before five o'clock, and that J. T. Billiter was prevented from voting for contestant by intimidation practiced by the friends of Goff. Goff filed an answer and counterclaim contesting the election of Daniels. He denied the disqualification of all the voters mentioned in the petition except Mary Goff and Lydia Holloway. He further averred that Texie Smith, Barbara Tucker, Thursa Campbell, Margaret Justice, Dollie Justice, Elizabeth Billiter, Mary Daniels and Almedia Adkins, who cast their votes for contestee, were not qualified voters because they were females and could not read and write; that Ida Bevins and Nannie Hunter were not qualified voters because the former did not live in the district at the time of the election, and the latter, who had been a resident of Ohio, had not lived in the state of Kentucky

for the time required by the statute.  He also alleged that John Smith, who voted for contestee, was not a qualified voter because he was an infant at the time of the election.

The circuit court set aside the election on the ground that there was such fraud, intimidation and violence in conduct of the election that neither candidate could be adjudged to have been fairly elected.  Goff appeals and Daniels prosecutes a cross-appeal.

Contestant's witnesses testified that both J. M. Billiter, clerk of the election, and Harmon Blackburn, another officer of the election, who were for contestee, got into a discussion with the representatives of contestant and stated in substance that they intended to run the election to suit themselves.  Billiter sent one of his children to his home for a pistol and laid the pistol on the table about half an hour while the election was going on.  It further appears that the election officers closed the polls about seven minutes before five o'clock. It is only claimed that one voter was prevented from voting by intimidation, and that one voter was prevented from voting by the closing of the polls before the hour fixed by law.  It further appears that about twenty per cent of the votes cast were illegal, but they were almost evenly distributed between the two candidates.  It is well settled that an election affected by fraud, intimidation or other illegality, should be set aside only when it can not be determined by any reasonable method on which side a majority of the legal votes were cast. Wellbrecht, et al. v. Ingram, et al., 164 Ky. 462, 175 S. W. 1023. The determination of this question is not difficult in this case because the election was *viva voce,* and it can be readily ascertained who the illegal voters were, and for whom they voted, and what voters were prevented from voting by intimidation or other misconduct.

Of the contested votes for Goff, the evidence in our opinion shows that Julia Ann Holloway, Sarah Holloway, Virgie Blackburn, Lydia Kendrick, Sarah Kendrick were able to read and write, and that Charles Billiter was a resident of the district, and all were qualified to vote.  On the other hand it is conceded that Mary Goff, Lydia Holloway, Rebecca Billiter, Susie Justice and Almedia Billiter could not read and write and were therefore disqualified.  Deducting these votes from

thirty-two makes the number of legal votes which Goff received twenty-seven.

Of the contested votes for Daniels, Texie Smith, Barbara Tucker, Margaret Justice, Dollie Justice and Elizabeth Billiter, all admit their disqualification. It further appears that John Smith was an infant when he voted; that Ida Bevins was a non-resident of the district, and that Nannie Hunter, who had been a non-resident for several years, had not been a resident of Kentucky for a year at the time of the election. Deducting these eight votes from the thirty votes received by Daniels makes his legal votes twenty-two, unless the votes of J. T. Billiter and Eliza Smith should be counted on the ground that the former was prevented from voting by intimidation, and the latter was prevented from voting by the closing of the polls before the hour fixed by law. Fairly considered, the evidence does not show that J. T. Billiter was prevented from voting by intimidation. It merely shows that he refrained from voting because he did not want to cause any hard feeling between neighbors. It is by no means clear that Eliza Smith was prevented from voting by the closing of the polls, since it was not shown that she asked to vote, but even if it be conceded that she was prevented from voting and would have voted for Daniels, the addition of her vote would have made his vote only twenty-three.

Here then we have a case where it is clear that after all illegal votes were rejected and the contestant was given the benefit of one vote which would have been cast for him had not the polls closed too soon, the contestee received twenty-seven legal votes and the contestant twenty-three legal votes. It therefore follows that the election should not have been set aside, but that the contestee should have been declared elected.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.