## Mary Daniels v. Goff, et al.

## David Daniels v. Goff, et al.

(Decided June 14, 1921.)

## Appeals from Pike Circuit Court.

1. Deeds—Acknowledgment—Recording—Effect.—Under the provisions of Ky. Stats., section 496, providing that no deed, or deed of trust, or mortgage conveying title to real estate shall be valid as against creditors until such deed shall be acknowledged or proved according to law and lodged for record, a voluntary conveyance of the debtor's real estate, made before the creation by him of a liability, but not lodged for record until after the creation of the liability, is void as to such liability.

2. Fraudulent Conveyances—Indebtedness, Insolvency and Intent of Grantor.—The provision in section 1907, Ky. Stats., that every conveyance by a debtor of his property without valuable consideration shall be void as to "all his then existing liabilities," embraces more than the fixed and certain debts which the debtor had at the time of the conveyance incurred, and embraces in addition such existing obligations of the debtor as may thereafter eventuate in an indebtedness.

3. Fraudulent Conveyances—Insolvency and Indebtedness.—The term "existing liabilities" as used in the statute embraces conditional or contingent obligations in existence at the time of the conveyance which may or not in the future result in indebtedness.

4. Execution—Setting Sale Under Aside.—An execution sale of two tracts of land levied on by the same execution for the same debt, where the sheriff's report of sale fails to show that he offered them separately, was properly set aside, the appraisement showing such value of the property as would probably have resulted in the sale of only one of the tracts if they had been offered separately.

WILLIS STATON for appellants.

J. E. CHILDERS for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming on original and cross appeals.

These two appeals involve practically identical questions and were consolidated and heard together in the lower court, although separate judgments were entered, and they will be heard together here.

Appellant Mary Daniels is the wife of J. P. Daniels, and appellant David Daniels is the son of J. P. and Mary Daniels.

In August, 1918, appellee Goff recovered in the Pike circuit court a judgment for costs against J. P. Daniels in an action which Daniels had instituted in October, 1916, contesting the right of Goff to the office of school trustee.

The execution was levied on two tracts of land in Pike county as the property of J. P. Daniels, and they were sold under the execution and Goff became the purchaser.

These are two equitable actions, one by Mary Daniels against Goff and the sheriff, seeking to set aside the sale and to enjoin the sheriff from making a deed to Goff thereunder, upon the ground that she and not J. P. Daniels was the owner of one of the tracts of land in question at the time of the levy and sale.

The action of David Daniels seeks similar relief against the same parties for the same reason as to the other tract of land levied on and sold.

The answer and counterclaim of Goff asserted title under the execution sale to each tract, and attacked as fraudulent, voluntary and without consideration the conveyances under which each of the plaintiffs claimed title from J. P. Daniels.

Upon a trial in the circuit court the chancellor set aside the sheriff's execution sale as to each of the tracts of land involved, but adjudged to Goff a lien on each of them for the amount of his said execution, and adjudged an enforcement of the same. To that judgment the plaintiffs each excepted and prayed an appeal, and the defendant Goff likewise excepted and prayed an appeal, and the appellants having filed their transcript in this court, appellee Goff has prayed and been granted a cross appeal.

On the 9th of February, 1898, Chaney and wife and others conveyed to J. P. Daniels and Mary Daniels, his wife, jointly a tract of land on the waters of Upper Cloe creek in Pike county, which is the tract of land involved on the Mary Daniels appeal. The title to this property so remained in them jointly until the third day of January, 1916, at which time J. P. Daniels is alleged to have conveyed his interest in the same to appellant Mary Daniels, his wife, in consideration of her interest in her father's estate and her interest in the Gilmore Justice tract of land. That instrument bears date the third day of January, 1916, and the certificate of acknowledgment bears the same date. But the acknowledgment was taken by G. C. Daniels, another son of J. P. and Mary Daniels, the said G. C. at the time being a deputy county court clerk; but the said deed was not lodged for record until the first day of October, 1917.

As to the tract claimed by David Daniels, it appears that on the 14th of May, 1917, Nannie Hunter and her husband conveyed the same to J. P. Daniels in consideration of $150 cash in hand paid, and thereafter on the first day of June, 1917, J. P. Daniels and his wife conveyed the same tract of land to David Daniels, then an infant, in consideration of the sum of $150 cash in hand paid; and this latter deed was lodged for record on the 27th of September, 1917.

The facts out of which the judgment for costs against Daniels grew were these: at the August election, 1916, Goff and Daniels were opposing candidates for school

trustee in a sub-district in Pike county; Goff appeared the winner on the face of the returns and received the certificate. Daniels, however, in October, 1916, filed his action contesting the election of Goff, and after full preparation that action was tried in the Pike circuit court in March, 1917, and it was therein adjudged that the whole election was invalid because of fraud, intimidation and violence, and each party was adjudged to pay his own costs. From that judgment Goff prosecuted an appeal to this court, and in June, 1918, that judgment was reversed, with directions to enter a judgment adjudging Goff to have been elected (Goff v. Daniels, 181 Ky. 18), and upon a return to the Pike circuit court it was so adjudged.

So that it will be seen that long before his conveyance to David Daniels on the first of June, 1917, and the lodging of the same for record on the 27th of September, 1917, and long before his deed to his wife, dated January 3, 1916, was lodged for record on the first of October, 1917, J. P. Daniels had instituted his contest suit against Goff and had thereby become liable to Goff in the event of the latter's success for such costs as he might therein incur; in other words, when he instituted his action he was the title holder on the record of a one-half, undivided interest in the tract of land conveyed to him and his wife jointly, and during the pendency of his action he became the title holder of the other tract of land, which during its pendency he conveyed to his son David.

There is no contention by either of the plaintiffs that at the time of the two conveyances to them separately by J. P. Daniels they actually paid any consideration for the land conveyed except as hereinafter stated.

As to the Mary Daniels conveyance, the claim is that it was made to secure to her an interest in another tract of land which had been given her by her father years before.

As to the David Daniels tract, the claim is that his father in the first place bought the land for him, although he was at the time an infant, and paid the whole purchase price of $150 with the understanding that a cow which he, David, owned should be taken into the deal as a $50 cash payment, and that his father would convey the land to him upon the payment to him of the remaining $100.

The cow appears to have been raised on J. P. Daniels' farm and claimed by the infant David, but there is no satisfactory evidence that in truth and in fact the title to the

cow was in David; and so far as the $100 subsequent payment claimed to have been made by David to his father is concerned his evidence is that he paid it in timber which came off of the land in controversy. That is to say, he paid his father for his father's land by money received from the sale of his father's timber.

It is sufficient to say of each of these claims that the evidence that J. P. Daniels in either instance was holding the tract of land in trust falls far short of being satisfactory, and is most convincing that they were each voluntary conveyances by him and made without consideration.

Ky. Stats., section 1907, provides: "Every gift, conveyance, assignment, transfer or charge made by a debtor of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities. . . "

And it is provided in section 496, Ky. Stats., that no deed or deed of trust or mortgage conveying title to real estate shall be valid as against creditors "until such deeds shall be acknowledged or proved according to law, and lodged for record."

It will be seen, therefore, that at the time these two deeds were lodged for record the contest suit instituted by J. P. Daniels had been pending almost a year; that the costs in the circuit court had practically all been incurred by both parties, and that the appeal was at the time pending in this court; and the question appears to be, independent of the question of actual fraud, whether the costs which had already accrued, but which had not been finally adjudged when these deeds were put upon the record, and the costs which it was then known would necessarily accrue in the future, were existing liabilities of J. P. Daniels within the meaning of the statute quoted, although at that time it was not adjudged that he would have the same to pay.

Under section 496 it is clear that Goff was not required to take notice of either of the deeds until they were lodged for record, and up to that time he had a right to assume, because of Daniels' record title, that he was litigating with a party who would be good for the costs at the end of the suit if he, Goff, were successful, and at that time, as we have seen, the costs had practically all been incurred.

It seems reasonably clear that our statute, in the use of the words "all his then existing liabilities," meant something more than the fixed and certain debts which

the vendor had theretofore incurred, or it would have used the simple and plainer expression "debts" or "indebtedness" in lieu of the word "liabilities." The word "liabilities" includes debts and indebtedness, but it is broader and includes in addition existing obligations which may or may not in the future eventuate in an indebtedness. For instance, one may be at the date of a conveyance by him the surety of another which he never contemplated he would have to pay and yet it would be an existing liability whether he ultimately had it to pay or not.

"Existing liabilities" is a sufficiently broad and comprehensive term to embrace conditional or contingent obligations which may or not in the future result in indebtedness.

While the difference between existing liabilities and existing debts does not seem to have been clearly pointed out in any opinion of this court, the distinction, as we have undertaken to make it, runs through the opinions.

For instance, in the case of Garrard v. Garrard, 7 Bush 436, Garrard and his prospective wife entered into an antenuptial contract whereby she relinquished her prospective right of dower in his estate, but in lieu of the same it was stipulated that he should give her such property or annuity out of his estate as might be sufficient to support her comfortably during her life or widowhood. He died without having made any such provision for his wife, having previously conveyed all of his landed estate to his children. The wife filed a suit in equity alleging that the administrator had refused to make provision for her support as provided in the agreement, and alleging that the conveyances to the children were without valuable consideration, and asking that her claim for support out of the decedent's estate be enforced, and this court, in the course of its opinion, said:

"The obligation of Thomas L. Garrard, Sr., to make the stipulated provision in lieu of dower, though conditional and dependent on his wife's surviving him, was at the date of the conveyances an existing liability, and as it satisfactorily appears that the deeds to the appellants were made without any valuable consideration, they were embraced by the provisions of section 2, chapter 40, Revised Statutes, and void as to the claims of the appellee, which in a court of equity were properly enforceable against the land in the possession of the appellants."

There the court plainly held that the obligation of Garrard to provide for his wife's support out of his estate, although contingent upon her surviving him, having been in existence at the time of his conveyance to his children, was at that time an existing liability as contemplated by our statute and was enforceable as against the children after his death, although only a contingent or a conditional obligation at the time of his conveyances to them.

In the case of Yankey v. Sweeney, 85 Ky. 55, Sweeney qualified in 1874 as the guardian of Sallie Yankey. At the time he owned a tract of land in Washington county of 64 acres. Thereafter in January, 1878, Sweeney conveyed this 64 acres to his daughter, Lucy, and it was held that although at the date of the conveyance to the daughter there was no fixed amount of indebtedness or liability of Sweeney to his ward, yet it was an existing indebtedness and the 64 acres were thereafter subjected to the payment of that liability, the amount of which was subsequently to the conveyance fixed.

In the case of Sterk v. Redman, 166 Ky. 693, Sterk and Redman on the 14th of December, 1912, entered into a contract whereby Sterk agreed to pay Redman for staves of certain dimensions thereafter to be delivered. On the 29th of January, 1913, Sterk conveyed without consideration all of his property to his wife. After the conveyance to his wife staves were delivered to Sterk under the terms of the contract made before the conveyance, and this court held that the liability having grown out of the contract, which was in existence at the time of Sterk's conveyance to his wife, the latter was void as to the liabilities growing out of that contract, although part of the staves had been delivered after the execution of the conveyance.

Nor do we see that any distinction can be drawn between an existing liability growing out of a contract previously entered into and an existing liability by operation of law growing out of the voluntary act of the debtor.

Here Daniels voluntarily instituted against Goff in October, 1916, his contest suit, and he did that with the knowledge that the costs of that suit would have to be paid by one or the other, and that if he were unsuccessful he would be required to pay Goff's costs, and before the record title to these two pieces of land was changed, Goff had actually incurred most of the costs necessary in that litigation; and we therefore hold that there was an existing liability upon the part of Daniels to Goff at the time

each of these deeds was filed for record, even though that liability was contingent or conditional upon Goff's success in the litigation, and that therefore each of the deeds being voluntary and without consideration, was void as to Goff's execution for costs.

As to the cross appeal, and the claim by the appellee, that the court erred in not adjudging him the title to these two tracts of land, it is only necessary to say that the sheriff's report of sale shows that each of these tracts of land was levied upon as the property of J. P. Daniels; and that they had been previously appraised at $2,150, and that they were knocked off to Goff for something less that $100, presumably the amount of his debt, interest and costs.

The two reports of sale filed in the two transcripts by the sheriff show that the two tracts of land were levied on under the one execution, at the same time, and the sale advertised at the same time, and that they were sold at the same time, to the same purchaser at the same price, each as the property of Daniels; but there is nothing in either report to show that either tract was offered separately from the other tract, and it is perfectly apparent from the appraisement, and from the record as a whole, that if either tract had been offered separately from the other it would have been sufficient to pay the execution, and the sheriff having failed to offer them separately, the court properly set aside the sale.

Not only so, as to the Mary Daniels tract, the levy appears to have been made upon and a sale had of the whole tract of land, when, as a matter of fact, before the date of the deed of J. P. Daniels to his wife he owned only a one-half interest therein.

Each of the judgments is affirmed on the original and cross appeals.