## INTERNATIONAL–GREAT NORTHERN R. CO. v. TEXAS CO.   (No. 6884.)*

(Court of Civil Appeals of Texas.   Austin.
Jan. 20, 1926.   Rehearing Denied
Feb. 10, 1926.)

**1. Courts ⚌500—Federal court held not to retain jurisdiction of claim against railroad for breach of contract to purchase fuel oil.**

Claim for breach of contract for purchase of fuel oil by railroad, which was sold to new corporation under order of federal court, having been refused by such new corporation, held, that federal court did not, under its decree confirming, under Rev. St. 1911, arts. 6624, 6625, the sale of the railroad properties to the new corporation, retain exclusive jurisdiction of such properties as respects claims of this character; hence state court had jurisdiction of action against the new corporation to enforce such claim.

**2. Railroads ⚌194(6) — Claim for damages for sold railroad's breach of contract to purchase fuel held "subsisting" liability for current expenses of operation, within statute.**

Claim for damages for breach of contract to purchase fuel oil by railroad, which was later bought by another corporation, held a subsisting liability for current expenses of railroad's operation, under Rev. St. 1911, art. 6624, and recognized as such by agreement of new corporation, under article 6625; liability for performance of the oil-purchasing contract becoming fixed and "subsisting" when contract was signed, though claim for damages may not have arisen until breach, and it being immaterial whether breach occurred before or after appointment of receivers for the railroad.

**3. Railroads ⚌194(6) — Statute relative to claims against railroad sold is liberally construed.**

Articles 6624, 6625, Rev. St. 1911, carried forward as articles 6421, 6422, Rev. St. 1925, as to claims against railroad sold, being remedial, should be liberally construed to include any and all liabilities reasonably necessary and incidental to proper functioning of railroad as enterprise or industry as whole.

**4. Railroads ⚌194(6) — Claim for damages for sold railroad's breach of contract to purchase fuel held subsisting "liability" which had "accrued."**

Claim for damages for railroad's breach of contract to purchase fuel oil held subsisting accrued liability, within meaning of Rev. St. 1911, art. 6624; "accrue". meaning, to become vested, accumulate, or come into existence as a right, and "liability" being state of one who is bound in law and justice to do something which may be enforced by action.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accrue; Liability.]

**5. Railroads ⚌194(8)—Seller of fuel entitled to personal judgment against corporation buying railroad, against which he had judgment.**

Where seller recovered judgment in proceeding against railroad's receivers for damages for railroad's breach of contract to purchase fuel oil, and later such railroad's properties were sold to another corporation, in suit by seller to recover amount from new corporation it was not error to give personal judgment against such corporation instead of limiting it to charge against property purchased.

**6. Railroads ⚌194(6)—Seller of fuel entitled to interest on judgment against corporation buying railroad, against which he had recovered damages.**

Where seller recovered, in federal court, judgment, in proceeding against railroad's receivers for damages for railroad's breach of contract to purchase fuel oil before such railroad was sold to another corporation, in suit by seller to recover amount from new corporation he was entitled not only to judgment, but also to interest thereon; debt having been fixed as liquidated demand by judgment of federal court.

Appeal from District Court, Travis County; George Calhoun, Judge.

Suit by the Texas Company against the International-Great Northern Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Sam Streetman, Samuel B. Dabney, Walter F. Woodul, and James E. Kilday, all of Houston, for appellant.

H. S. Garrett, of Fort Worth, T. J. Lawhon and Robt. A. John, both of Houston, White, Wilcox, Graves & Taylor, of Austin, J. A. McNair, of Houston, Chas. A. Wilcox, of Austin, and C. B. Ames, of New York City, for appellee.

BAUGH, J.   On January 1, 1914, the Texas Company, as seller, made a contract with the International & Great Northern Railway Company, as buyer, from which we quote the first two paragraphs:

"(1) That the seller hereby agrees to sell and deliver to the buyer and the latter hereby agrees to purchase and receive from the seller a minimum of one million three hundred and fifty thousand (1,350,000) or a maximum of one million six hundred and fifty thousand (1,-650,000) barrels of fuel oil, all at the agreed price of ninety-five (95) cents per barrel of forty-two (42) gallons.

"(2) The period covered by this contract shall begin with the 1st day of July, 1914, and end on the 30th day of June, 1915, and deliveries shall be made during said period in as nearly equal amounts during each month as may be expedient, but all deliveries made and accepted shall be deemed complete and payable whether excessive or not."

Under this contract the railway company accepted delivery of approximately 160,000

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused April 7, 1926.

barrels of oil. On August 7, 1914, however, the Central Trust Company of New York filed its bill of complaint in equity in the federal District Court at Houston, against the International & Great Northern Railway Company, alleging the insolvency of the railway company, and asked for the appointment of receivers and for a foreclosure of a refunding mortgage, theretofore given by the railway company on its properties to secure the bondholders. The railway company entered its appearance in said suit and consented to a receivership, and on August 10, 1914, receivers were appointed by the court and directed to take charge of all the railway company's properties, etc., and to operate the railroad. Said receivers thereupon refused to further carry out said contract for fuel oil. On May 4, 1915, the Texas Company intervened in said receivership suit, alleging damages for breach of said contract, and on May 6, 1919, the federal District Court in said intervention gave the Texas Company judgment, amongst other things, against said International & Great Northern Railway Company for $239,406.85, "as damages for breach of contract, together with interest thereon at the rate of 6 per cent. per annum from the 10th of August, 1914, until paid, which damages and interest thereon are classed as a general and unsecured claim, so far as this receivership is concerned, to be paid as such out of any funds available therefor."

Under order of said federal court all the properties, franchises, etc., of the old corporation, that is, of the International & Great Northern Railway Company, were on July 28, 1922, sold out to Bailie and Moore, who organized a new corporation under the name of the International-Great Northern Railroad Company, and conveyed all said properties to the new corporation. This sale and conveyance was made by order of the federal court in accordance with and under the provisions of articles 6624 and 6625, R. S. 1911. Meantime, however, Bailie and Moore and their associates, who joined them in said conveyance, made and entered into a written agreement, filed with the Secretary of State, containing, among others, a provision, in which they agreed:

To "take and hold said property and franchises charged with and subject to the payment of all subsisting liabilities and claims for death and for personal injuries sustained in the operation of the railroad by the company, and by any receiver thereof, and for loss of and damage to property sustained in the operation of the railroad by the company, and by any receiver thereof, and for the current expenses of such operation, including labor, supplies, and repairs, provided that all such subsisting claims and liabilities shall have accrued within two years prior to the beginning of the receivership resulting in the sale of said property and franchises, or within two years prior to the sale, if said property and franchises be sold otherwise than under receivership proceedings."

The conveyance to the new corporation was made subject to this agreement. The new corporation, after it had acquired said properties, refused to pay the claim for damages arising from the breach of contract and established by the judgment of the federal District Court. The Texas Company then brought this suit thereon in the district court of Travis county, Tex., on June 14, 1923. Its prosecution in the state court was enjoined on November 22, 1923, by the federal District Court at Houston, but said injunction was subsequently modified to permit such prosecution in the state court, limiting the issue to be tried there to the right of the Texas Company to recover against the defendants on obligations arising under and pursuant to articles 6624 and 6625, R. S. 1911. The case was thereupon tried to the state district court without a jury, and judgment rendered in favor of the Texas Company, among other things, for $381,654.34, with interest thereon from July 3, 1924, at 6 per cent. against the new corporation, International-Great Northern Railroad Company, from which this appeal is prosecuted.

Appellant brings 31 assignments on which it bases 8 propositions of law. There are, however, only two major issues in the case. The first is, Are damages for breach of contract to furnish fuel oil "subsisting liabilities and claims * * * for the current expenses of such operation, including labor, supplies and repairs" within the purview of article 6624, R. S. 1911? And, second, Did the federal District Court at Houston reserve to itself exclusive jurisdiction to enter and enforce a decree in rem against the property and franchises in question.

[1] We shall first dispose of the second question raised. Appellant insists that under the decree of the federal District Court at Houston, Tex., confirming the sale of the properties of the International & Great Northern Railway Company to Bailie and Moore, that court expressly retained exclusive jurisdiction of the properties in question, so far as enforcement of claims of the character here involved against such properties are concerned. The sections of said decree under which this contention is made read as follows:

"Eighth. The court reserves jurisdiction over the property sold with reference to all claims against the sold-out International & Great Northern Railway Company, which have been litigated or may hereafter be litigated in this or any court, so far as to enforce the payment of any judgments therefor out of the property sold, if the same be not paid within 90 days after the delivery of the deed (herein provided for), to the purchasers or their assignee, if such judgments are within the protection of the Revised Statutes of Texas, articles 6624 and 6625, or either of such articles, and the

payment thereof is hereby made a charge upon the property.

"Ninth. All questions relating to amounts of compensation, charges, allowances, costs, disbursements, and expenses referred to in said final decree, and to suits now pending in this court in this cause, or affecting the property above dealt with, are hereby respectively reserved by this court for further hearing and determination, and all adjustments and payments to be made, unless agreed upon by the parties in interest, shall hereafter be determined, fixed, allowed, and settled by this court, and all questions not hereby disposed of are reserved for future adjudication, including all claims pending or hereafter made against the property sold originating under the receiver, the defendant, or its predecessors in title. Any party to this cause and any party who has intervened in this cause may at any time apply to this court for further relief at the foot of this order."

We cannot sustain this contention. The federal district judge who issued the decree refused to sustain same when he modified the injunction issued by him so as to permit appellee to file this suit in the district court of Travis county, Tex. This appellant prosecuted, according to a copy of its brief furnished this court by its attorneys, an appeal from that order to the United States Circuit Court of Appeals for the Fifth Circuit, wherein it made the same contention there that it now makes here. There has just been presented to us a copy of the opinion of said United States Circuit Court of Appeals (10 F.[2d] 501) properly certified by the clerk of said court, affirming on December 1, 1925, the judgment of the federal District Court at Houston which authorized the suit at bar.

The same question was also raised by the same appellant and decided adversely to it by this court and by the Supreme Court of Texas, in International & G. N. Ry. Co. v. Concrete Investment Co., 201 S. W. 718; Id., 263 S. W. 265. Appellant's contention was also expressly overruled in International & G. N. R. R. Co. v. Oehler (Tex. Civ. App.) 262 S. W. 785, in which case writ of error has been refused by the Supreme Court of Texas. In both of these cases the language of the order of the federal District Court was very similar to that used in the instant case. See also International-G. N. R. R. Co. v. Clerk District Court Bexar County (C. C. A.) 4 F. (2d) 19. We deem further discussion of this issue unnecessary and content ourselves with referring to the cases cited for a full consideration of the question raised.

[2, 3] The other question raised, so far as we have been able to find, is one of first impression. We restate what we consider the controlling issue in the case, viz.: Are damages recovered for breach of contract to supply fuel oil for a period of one year, with which to operate appellant's engines, a subsisting liability for current expenses of operation of the railroad as contemplated in article 6624, R. S. 1911, and recognized as such by the new corporation, appellant here, in its agreement executed under article 6625.

Under articles 4549 and 4550, R. S. 1895, and prior to the amendment thereof in 1910, the sale of railroads under foreclosure proceedings and deeds of trust at the instance of the bondholders and mortgage holders effectively cut off and destroyed numerous just and equitable claims incident to and growing out of the operation of the railroad properties. In view of threatened sales of railroads in Texas in 1910, Governor Campbell called the Legislature into special session to protect the holders of such claims, and to amend said articles 4549 and 4550. The passage of what is commonly known as the International & Great Northern Act, amending said articles and carried forward as articles 6624 and 6625, R. S. 1911, and as articles 6421 and 6422, R. S. 1925, was the result. This act amended the old law so as to provide, among other things, that the purchaser or purchasers of the sold out railroad could not be deemed the owners of the charter of the railroad, unless they took the properties of the road subject to and charged with the payment of three classes of subsisting liabilities and claims (1) those for death and for personal injuries sustained in the operation of the railroad by the company, and by any receiver thereof; (2) those for loss of and damage to property sustained in such operation; and (3) those "for the current expenses of such operation, including labor, supplies and repairs," provided same shall have accrued within two years prior to the beginning of the receivership, or within two years prior to sale, if such sale be made without a receivership. See article 6624, R. S. 1911. It also provided (article 6625) that, where a new corporation is organized to take over such railroad, such new corporation must take the properties and franchises charged with and subject to the payment of the three classes of claims and subsisting liabilities above enumerated. The agreement made by the International-Great Northern Railroad Company, the new corporation, a portion of which is set out above, embodies the language of the statute as to this provision. The trial court found in his finding of fact, and also concluded as a matter of law, that appellee's damage from appellant's breach of contract is included within the third class of claims and subsisting liabilities, and rendered judgment accordingly.

It is not denied by appellant that the oil contracted for was necessary for the physical operation of its trains, nor that, if the oil had been delivered, the claim for the contract price would have been clearly within the third class enumerated in the statute. Nor is there any contention that the price was unreasonable or the contract unduly burdensome at the time it was executed. The contract was, we think, consonant with ef-

ficient administrative policy in providing in advance for a dependable fuel supply essential to the operation of the road during the ensuing fiscal year. The liability of the railroad company for the performance of the contract became fixed and subsisting when the contract was signed, though the claim for damages may not have arisen until the contract was breached. McLean v. Moore (Tex. Civ. App.) 145 S. W. 1074; Coulter Dry Goods Co. v. Wentworth, 153 P. 939, 171 Cal. 500. Nor is it material, under the view we take of the case, whether the breach of the contract occurred when the railway company became insolvent, as the trial court found, and before the appointment of the receivers, or was breached after the receivers were appointed upon their refusal to carry it out. If the damages for its breach are properly classed as a liability or claim for "current expenses of such operation" within the purview of article 6624, the properties of the railway company were charged in either event. International-G. N. R. R. Co. v. Oehler, supra; International-G. N. R. R. Co. v. Clerk Dist. Ct. Bexar County, supra, and Railway Company v. Concrete Investment Company, supra.

Appellant contends that appellee's claim cannot be classed as an operating expense nor a liability therefor because it is not for anything actually furnished or used in any manner in the physical operation of the railroad properties, but that it is merely a claim for lost profits to the Texas Company resulting from the failure of the railway company to accept its oil. It insists that the term "expenses of such operation" should be given a strict construction and confined to payment for work actually done or materials actually furnished. Numerous authorities are cited defining the terms "operating expenses," "operation of the railroad," "operation of trains," etc., most of which are cases applying what is commonly known as the "six months' rule" recognized in the federal courts, or fellow-servant cases usually involving the actual operations of trains, cars, locomotives, etc.

So far as this case is concerned the International & Great Northern Act superseded the federal equity rule. Nor shall we undertake to discuss the numerous cases cited and reviewed in the briefs. The International & Great Northern Act was a remedial act, passed at a special session of the Legislature called by the Governor expressly for that purpose and to meet an emergency, and should be given a liberal construction to effect the purposes for which it was passed. International & G. N. Ry. Co. v. Concrete Investment Company, supra; Miller v. Robertson, 45 S. Ct. 73, 266 U. S. 243, 69 L. Ed. 265.

[4] It is to be noted that the language of the act includes "all subsisting liabilities and claims * * * for the current expenses of such operation," which "shall have accrued within two years prior to the beginning of the receivership, etc." In the Standard Dictionary "liability" is defined as:

"The condition of being responsible for a possible or actual loss, penalty, evil, expense or burden; as liability for damages."

In 36 C. J. 1050, it is considered as:

"A broad term of large and most comprehensive significance, * * * the state of one who is bound in law and justice to do something which may be enforced by action."

Again:

"Ordinarily, it means an obligation which may or may not ripen into a debt; and includes in addition existing obligations which may or may not in the future eventuate in an indebtedness." 36 C. J. 1051; Daniels v. Goff, 232 S. W. 66, 192 Ky. 15.

It is a broader term than expense, claim, or debt:

"Existing liabilities is a sufficiently broad and comprehensive term to embrace conditional or contingent obligations, which may or not in the future result in indebtedness." Daniels v. Goff, supra; Hyatt v. Anderson's Trustees (Ky.) 74 S. W. 1094; Miller v. Robertson, supra.

The term "accrue" means "to become vested; accumulate; come into existence, as a right or the like." See Standard Dictionary; 1 C. J. 733.

Taking into consideration the evils which existed at the time the International & Great Northern Act was passed, and the relief which it was the purpose of the Legislature to afford, we are clear in our opinion that no such limited construction of the terms "operation of a railroad" insisted on by appellant, and placed thereon in numerous fellow-servant cases cited and reviewed, can be placed on the language "operation of the railroad by the company and by any receiver thereof." As used in said act, we think this language, given a liberal interpretation in the light of the definitions above, was intended to include any and all liabilities reasonably necessary and incidental to the proper functioning of the railroad as an enterprise or industry as a whole; that is, any obligation reasonably incident and necessary to keep it a going concern generally as a railroad, whether same arose in physically operating its trains, in repairing its roadbed, in maintaining its clerical forces in offices, in complying with the requirements of the state and federal laws, or in the purchase of materials necessary for any of those purposes, was, we think, intended to be made a charge against the property under the act. Giving such liberal construction to the language used and pursuant to the general purpose of the act, we have concluded that the contract itself, as same existed at the time the

receivers were appointed, was a "subsisting liability" within the purview of said article 6624; and that the damages, legally established as the result of its breach, were therefore necessarily encompassed.

[5] The next contention made is that it was error to render a personal judgment against appellant because it did not assume payment of any such claim. That same was only a charge against the property purchased, and not a personal obligation of the purchaser. This same contention was made by the same appellant in International-G. N. R. R. Co. v. Oehler, supra, and there decided adversely to appellant. Judge Hodges very fully and ably discussed the issue on motion for rehearing, and our Supreme Court refused a writ of error. To the same effect is the case of International & G. N. Ry. Co. v. Concrete Investment Co., 263 S. W. 265, decided by the Commission of Appeals, and in which the same issue was discussed. We deem further discussion of it here unnecessary.

[6] Nor do we think there is any merit in the proposition that the Texas Company was not entitled to recover interest. The amount of the damages was fixed as a liquidated demand by the judgment of the federal District Court, and was such at the time the appellant made the agreement herein sued upon. If appellee was entitled to recover its debt, same being a liquidated demand in the state court, it was likewise entitled, under the pleadings and the proof, to recover interest thereon. 33 C. J. 210. International & G. N. Ry. Co. v. Concrete Inv. Co., supra; Missouri, K. & T. Ry. Co. v. Gray (Tex. Civ. App.) 160 S. W. 434; Freeman v. Walker & Sons (Tex. Civ. App.) 175 S. W. 1133.

Finding no error in the record, the judgment of the trial court is in all things affirmed.

Affirmed.