**TEXAS INDUSTRIAL ACCIDENT BOARD et al., Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

No. 5904.

Court of Civil Appeals of Texas, Waco.

Aug. 3, 1978.

John L. Hill, Atty. Gen., David M. Kendall, Jr., First Asst. Atty. Gen., Robert S. Bickerstaff, Jr., Asst. Atty. Gen., Jim R. Weaver, Asst. Atty. Gen., Austin, for appellants.

Noley R. Bice, Jr. and Maurice G. Walton, Haley, Fulbright, Winniford, Bice & Davis, Waco, for appellee.

HALL, Justice.

Under the provisions of section 12c–2 of Article 8306, Vernon's Ann.Tex.Civ.St., workmen's compensation insurance carriers are relieved of making payments into the Second Injury Fund when the total amount of the Fund "equals or exceeds $250,000.00 in excess of existing liabilities," until the amount in the Fund is thereafter reduced below $125,000.00. The single question in this case is whether the term "existing liabilities" as used in the statute means only finally determined claims against the Fund, or whether it also means and includes undecided claims filed against the Fund. Contending for the more restrictive connotation, appellee Allstate Insurance Company brought this suit against appellants Texas Industrial Accident Board and The Second Injury Trust Fund for a determination of the question. On Allstate's motion, summary judgment was rendered in its favor holding that the term "existing liabilities" in the statute means only liabilities that are "due and owing." This appeal resulted. We reverse the judgment.

In sections 12c and 12c–1 of Article 8306, Vernon's Ann.Tex.Civ.St., provision is made for payment of workmen's compensation from The Second Injury Fund as follows:

"Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the 'Second Injury Fund,' hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries. Provided further, however, that notice of injury to the employer and filing of a claim with the Industrial Accident Board as required by law shall also be deemed and considered notice to and filing of a claim against the 'Second Injury Fund.'

"Sec. 12c–1. If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury; provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second Injury Fund,' hereafter defined."

Then, in section 12c–2 of Article 8306, the creation and funding of the Second Injury Fund is set forth in the following terms:

"Sec. 12c–2. The special fund known as the 'Second Injury Fund' shall be created in the following manner:

"(a) In every case of the death of an employee under this Act where there is

no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the full death benefits, but not to exceed 360 weeks of compensation, as provided in Section 8, of Article 8306, Revised Civil Statutes of Texas, 1925, as amended, to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof.

"(b) When the total amount of all such payments into the Fund, together with the accumulated interest thereon, equals of exceeds Two Hundred Fifty Thousand Dollars ($250,000) in excess of existing liabilities, no further payments shall be required to be paid to said Fund; but whenever thereafter the amount of such Fund shall be reduced below One Hundred Twenty-Five Thousand Dollars ($125,000) by reason of payments from such Fund, the payments to such Fund shall be resumed forthwith, and shall continue until such Fund again amounts to Two Hundred Fifty Thousand Dollars ($250,000) including accumulated interest thereon."

The summary judgment in question was rendered upon the following facts: On October 26, 1975, appellee Allstate Insurance Company was the workmen's compensation insurance carrier for the Lone Star Motel. On that day an employee of Lone Star Motel named William Edgar Dempsey sustained an accidental injury while in the course of his employment which resulted in his death on December 4, 1975. At the time of Mr. Dempsey's death no person survived him who was entitled to compensation under the provisions of the workmen's compensation insurance laws of our State. Later, on February 8, 1977, appellant Texas Industrial Accident Board, after having determined there was no one entitled to benefits as the result of Mr. Dempsey's death, rendered an award wherein Allstate was ordered to pay to The Second Injury Trust Fund the sum $7,895.64. However, on December 12, 1975, deposits in the Fund reached an amount in excess of $250,000.00. The Fund was not thereafter reduced below

$125,000.00 at any time pertinent to this lawsuit.

On December 12, 1975, when the Fund exceeded $250,000.00 in deposits, only a single claim then existing against the Fund had been finally determined. The balance due on that claim at that time was $2,192.02. Even with that claim deducted from the Fund, the amount on deposit in the Fund still exceeded $250,000.00. However, at that time there were six claims pending against the Fund which had not been finally determined as valid which totaled $84,573.35, plus a seventh undecided claim for 30% of total and permanent benefits for which no amount is specified in our record. After Allstate filed its motion for summary judgment the parties stipulated in writing (solely for the purpose of the hearing on the motion) that the ultimate payment of the seven claims "would have reduced the sums on deposit in said Fund below $250,000.00"; that the $7,895.64 award against Allstate by the Board for the Fund "is in all things fair and reasonable"; and that "should the term 'existing liabilities,' as that term is used [in the statute in question] be construed to mean claims pending against The Second Injury Fund as well as liabilities previously determined to be owed, then [Allstate] agrees that it owes to The Second Injury Fund the full amount of the Industrial Accident Board's award."

As we have said, the trial court held that the term "existing liabilities" in the statute means only claims that have been finally decided. Accordingly, in the summary judgment, the Board's ruling and award against Allstate was set aside, and it was ordered that the Fund and the Board take nothing against Allstate. The Board and the Fund brought this appeal asserting that the term in question means and includes claims filed against it which have not been finally decided as valid claims for payment.

It has been said that the words "liabilities" and "indebtedness" may be deemed "accordion words" capable of expanding and contracting in their connotations, and that they may mean present, current, fu-

ture, fixed or contingent debts. *Erickson v. Grande Ronde Lumber Co.*, 162 Or. 556, 92 P.2d 170, 174 (1939). While the word "liabilities" includes debts, "it is not generally limited to [that meaning]. In common speech, in contracts, and in judicial decisions, it is frequently used, and has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely." *Wentz v. State*, 108 Neb. 597, 188 N.W. 467, 468 (Neb.Sup.Ct. 1922). And, "existing liabilities" has been held to be "a sufficiently broad and comprehensive term to embrace conditional or contingent obligations, which may or may not in the future result in indebtedness." *Daniels v. Goff*, 192 Ky. 15, 232 S.W. 66, 68 (1921); *International-Great Northern R. Co. v. Texas Co.*, 280 S.W. 282, 285 (Tex.Civ. App.—Austin 1926, writ ref'd). Cf. 25 Words And Phrases (Perm.ed.1961), pp. 50 et seq.

In *Reconstruction Finance Corporation v. Gossett*, 130 Tex. 535, 111 S.W.2d 1066, 1073 (1938) the Court stated that the words "debt" and "liability" as used in our Constitution and statutes are defined in a general, and not in a restricted sense. It said, "It seems from the authoritative definitions of the two words 'debt' and 'liability' that the word 'liability' has a more comprehensive meaning than the word 'debt.' Webster defines 'liability' as follows: 'That which one is under obligation to pay, or for which one is liable.'" The Court then quoted from the case of *Cochran v. United States*, 157 U.S. 286, 296, 15 S.Ct. 628, 632, 39 L.Ed. 704 (1895), as follows: "We know of no definition of the word 'liability,' either given in the dictionaries or as used in the common speech of men, which restricts it to such as are absolute, or excludes the idea of contingency. In fact, it is more frequently used in the latter sense than in the former, as when we speak of the liability of an insurer or a common carrier, or the liability to accidents or to errors."

The Second Injury Fund was enacted by the Legislature to limit liability for second injuries in order to encourage the employment of persons physically handicapped by previous injuries. *Miears v. Industrial Accident Board*, 149 Tex. 270, 232 S.W.2d 671, 672 (1950). The Court observed in that case that, "Obviously, an employer would be discouraged from employing such persons if he knew that under the law his insurer would become liable in the event of a second injury for the disability resulting from the combined effect of two injuries, and not merely for the disability resulting from the second injury considered alone."

Our Workmen's Compensation Law is a remedial statute which should be liberally construed with a view to accomplish its purposes, to promote justice, and to protect the employee. *Texas Employers' Ins. Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390, 394 (1946). In the light of this rule, and considering the purpose of The Second Injury Fund, we believe the term "existing liabilities" in the statute in question was intended by the Legislature to include claims filed with the Fund which have not been finally approved for payment. Stated another way, we hold that a claim filed with the Fund is an existing liability of the Fund within the meaning of the statute until the claim has been finally determined to be invalid. A contrary construction could endanger the capacity of the Fund to respond when its liabilities are finally determined and thereby jeopardize the purpose for which it was created; whereas, the interpretation we make can in no way prove harmful to insurers like Allstate, for, as the Supreme Court explained in *Miears v. Industrial Accident Board*, supra, under The Second Injury Fund Act the insurers remain liable only for the compensation payable for the second injury considered alone, and the Fund is therefore "made up of sums which, except for this statute, would be windfalls to insurers."

Appellants' asserted claims against the Fund were established by their answers to written interrogatories propounded by Allstate. As previously stated, Allstate conceded the truth of those claims solely for the purpose of the hearing on its motion for summary judgment. Appellants did not move for summary judgment, and they ask

here only that we remand the case for trial on the merits. Accordingly, the judgment is reversed and this cause is remanded to the trial court.