CHARLES W. WENTZ v. STATE OF NEBRASKA.

FILED MAY 15, 1922.  No. 22102.

1. **Banks and Banking:** CERTIFICATE OF DEPOSIT: REPORTS. Where a vice-president and managing officer of a bank issues a certificate of deposit on the bank upon a numbered form in regular use by such bank, payable to a person or corporation or order, and delivers it to the payee, to pay a personal obligation of the vice-president, the certificate of deposit is a liability of the bank within the meaning of section 18, art. XVI, title V, ch. 190, Laws 1919, which requires that liabilities of the bank be reported to the department of trade and commerce, although the bank received no consideration or deposit therefor.

2. ———: LIABILITIES: REPORTS. Where an officer of a banking corporation, within the apparent scope of his authority, issues an instrument purporting on its face to be an obligation of the bank, such transaction should be included in the reports of the bank required by law to be made to the department of trade and commerce, if such instrument be outstanding at the time any such report is required.

3 ———: ———: ———. In a prosecution of a bank officer for knowingly omitting an outstanding certificate of deposit from the list of liabilities of such bank in a required report to the depart-

ment of trade and commerce, it is no defense that such officer may have believed that such certificate of deposit was not a liability against the bank.

4. **Criminal Law:** Evidence: Photographs. If, on the trial, it is shown that the original certificate of deposit is not within the state, the court may admit in evidence a photographic copy of such certificate.

5. ――――: ――――: ――――. The admissibility of a photograph in evidence is a question largely within the discretion of the trial court, and unless it appear that such discretion has been abused, no error can be predicated thereon.

6. ――――: Verdict. The information contained three counts, each charging a separate offense. A verdict of guilty on one count and acquittal on the others is not inconsistent, though the evidence would have justified a conviction on all the counts. *Weinecke v. State*, 34 Neb. 14.

Error to the district court for York county: George F. Corcoran, Judge. *Affirmed.*

*Baker & Ready,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *C. L. Dort,* contra.

Heard before Morrissey, C. J., Aldrich and Rose, JJ., Raper and Stewart, District Judges.

Raper, District Judge.

The plaintiff in error was convicted of the crime of making a false report to the department of trade and commerce of the assets and liabilities of the American State Bank of Aurora. The evidence discloses quite conclusively that the plaintiff in error was the vice-president and managing officer of the American State Bank of Aurora; that on the 29th day of September, 1919, he, as vice-president of the bank, issued a certificate of deposit on the regular form used by the bank (being certificate No. 366 ) on said bank for the sum of $5,000 payable to the American National Fire Insurance Company or its order; twelve months after date, with interest at 3 per cent. At that time Charles W. Wentz was indebted to said insurance company, and

when the certificate of deposit was delivered, the insurance company surrendered to Wentz a note for $5,000 held by it against him. No money or property was actually paid to or deposited in the bank for said certificate, nor was any entry of or concerning the certificate of deposit made on any of the bank books. On or about March 5, 1920, pursuant to a request therefor by the state banking board, the plaintiff in error signed a report to the department of trade and commerce, upon a regular prescribed form, of the assets and liabilities of the bank, but in the listed liabilities omitted the certificate of deposit for $5,000.

At the close of the state's case, the defendant requested the court to direct a verdict of not guilty, because the evidence showed that the certificate of deposit was not a liability against the bank, and consequently the omission of it from the statement was not a violation of the law. The conviction must fail if the law was not intended to and does not embrace within its provisions the duty of the officers of a bank to include such an item in their reports to the state banking department.

Under the banking act, section 21, art. XVI, title V, ch. 190, Laws 1919, it is made a felony for any person to knowingly subscribe to or exhibit false papers, with intent to deceive any person or persons authorized to examine into the affairs of any banking corporation, or to make, state or publish any false statement of the assets or liabilities of such corporation. Other provisions of the law require certain officers of such corporation to make not less than four reports a year to the department of trade and commerce according to the form prescribed by said department, and, among other particular items, it is required that such reports shall state the resources and liabilities at the close of business on any past day specified by the said department. In response to such a request properly made, the plaintiff in error signed such a report, but in which the said certificate was knowingly omitted from the list of liabilities.

In construing a statute, the purpose of the legislature should be kept in view, to assist in ascertaining the meaning and scope of the language used. The plain purpose of the legislature was to require a full statement of the transactions of the officers concerning the business done by them in their official capacities as officers and agents of the bank, and experience has shown the necessity of such complete reports, so that the persons appointed by the state to examine, oversee and safeguard the interests of the bank's capital and the depositors may have full knowledge of all the business and transactions done by the officers, either actually or ostensibly, on behalf of the bank or within the apparent line of their authority that may affect its standing, reputation or solvency, or the integrity of its officers and agents, and their course of dealing in the conduct of the bank's affairs. These things are necessary for the state's agents to have knowledge of, in order that the state may, if it be found that said bank is insolvent, or "is conducting its business in an unsafe or unauthorized manner, or is endangering the interests of its depositors" (as the statute provides), take immediate possession of said bank, and hold the same until a receiver be appointed.

The meaning of the word "liabilities" has been given many times by judicial decisions, as well as by lexicographers. It is a broad term, and, while it may include debts, it is not generally limited to such term. In common speech, in contracts, and in judicial decisions, it is very frequently used, and has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely. The Standard Dictionary defines "liability" as "The condition of being responsible for a possible or actual loss, penalty, evil, expense, or burden." In *Home Ins. Co. v. Peoria & P. U. R. Co.*, 178 Ill. 64, Judge Boggs' opinion refers to the word "liable" in this language: "The word as used in the policy does not signify a perfected or fixed legal liability, but rather a condition out of which a legal liability may arise. The word, as most frequently used,

does not necessarily exclude the idea of a contingency." In *Cochran & Sayre v. United States,* 157 U. S. 286, 296, it is said: "We know of no definition of the word 'liability,' either given in the dictionaries or used in the common speech of men, which restricts it to such as are absolute, or excludes the idea of contingency." See, also, 25 Cyc. 223; *City of Denver v. Hubbard,* 17 Colo. App. 346; *Fidelity & Deposit Co. v. Comonwealth Trust Co.,* 119 N. Y. Supp. 598; *State v. Sheets,* 26 Utah, 105; *Price v. Parker,* 197 Mass. 1; *Hyatt v. Anderson's Trustee,* 74 S. W. (Ky.) 1094. In *Commonwealth v. Donovan,* 170 Mass. 288, a prosecution for giving a bribe to an officer to influence his vote, the defendant gave the officer his promissory notes, and it was contended that, inasmuch as the notes were given for an illegal consideration, they were void and of no value, and that therefore nothing of value was given, but the court announced the rule that the notes were valid on their face, were negotiable, and were of value, and in effect held that they created a liability, although given for an illegal consideration.

The purpose of the requirements of the law is to have all such transactions reported, so the banking department of the state might know whether the bank was insolvent, or was conducting its business in an unsafe or unauthorized manner, or was endangering the interests of its depositors, because it is on the truth or falsity of such reports and the facts disclosed thereby that the discretionary power and subsequent action of the department of trade and commerce largely depend. The conclusion follows that the certificate of deposit was a liability that should have been reported and its wilful ommission was a violation of the statute. To hold otherwise would largely nullify the positive provisions of the law; indeed, it would give rise to a situation which would render reports of bank officials of little or no value in determining the condition and status of banks. It is difficult to conceive a construction of the law with its obvious purpose and plain language which would give a dishonest bank official the right to issue obli-

gations which purport on their face to be liabilities of the
bank and then exonerate him from blame by saying there
was not sufficient consideration to hold the bank as
a debtor and therefore no harm was done. Oftentimes in
the course of such dealings it is a close question, frequently
depending upon questionable testimony, as to whether
such instruments do create a debt, and it is then only de-
termined after long and costly litigation. The lawsuit it-
self may be a liability, even if it is decided finally in the
bank's favor, because of the necessity of expending money
in defending against such *prima facie* obligations.

The state did not produce the original of the certificate
of deposit No. 366, but a photographic copy was offered,
and admitted over the objection of plaintiff in error. This
is assigned as error. It is claimed that the state did not
show that the original could not be produced, and there-
fore secondary evidence was inadmissible; and further it
is urged that no sufficient foundation was laid for the in-
troduction of the photograph. While the evidence as to
the inability of the state to produce the original possibly
was not followed up as strictly and in as minute detail as
is generally done, it does appear by a letter offered by the
defense that a short time before the trial the certificate
was in possession of a party in Kansas City, Missouri, and
the further testimony of Mr. Ahmanson, president of the
National American Fire Insurance Company, that about
30 days before the trial he had given the certificate to the
attorney for the Schooley Bank Equipment Company of
Kansas City, and that, so far as he knew, it was not in the
state. This seems *prima facie* sufficient to establish the
inability of the state to produce the original. Mr. Ahman-
son testified that he delivered the certificate to a photog-
rapher for the purpose of having a photograph made of it;
that the photographer later returned to him the certificate
and the photograph. The photographer was called as a
witness, and testified that the certificate was given to him
to be photographed, and that he made the photograph and
returned it and the certificate to the person who gave it to

him (Mr. Ahmanson), and that it was a correct photograph; and he produced the original negative from which the picture was printed. This seems sufficient identification and authentication of the exhibit.

The third contention of plaintiff in error alleges that the court during the progress of the trial made certain prejudicial statements in the hearing of the jury. Some of those no doubt were inadvertent and might well have been couched in more dignified, and in one instance more courteous, language; yet it does not seem probable that the jury were in any way influenced by the judge's remarks.

The fourth proposition relates to the instructions. These are in some respects faulty; but, taken altogether, they fairly submitted the issues to the jury, and, in view of the conclusive and undisputed evidence, it is quite certain that no prejudice resulted from these inaccuracies.

The remaining assigned error is that the action of the court in directing a verdict of not guilty on count 2, in the information, was an acquittal on count 3, which was the count upon which the verdict of guilty was rendered, and a motion in arrest of judgment was made, which was overruled. The amended information contained four counts; the first was dismissed before trial; in the second count the defendant was charged, in substance, with making a false entry and statement on the books of the bank by making no record or entry whatever of the said certificate of deposit; in the fourth count the defendant was charged with publishing a false statement of the liabilities of the bank by omitting any reference to said certificate; the court directed the jury to return a verdict of not guilty as to the second and fourth counts. The court probably based its ruling as to the second count upon the ground that, to sustain a verdict of guilt, it was necessary for the state to show some actual false entry on the books, and that the mere omission to make any entry was not within the purview of the statute. Whether that is a proper interpretation of the law is not material, and that question is not determined. The second and third counts charge

different offenses, and, while it may be that the same proof would have justified a conviction on both counts, the fact that a verdict of not guilty was rendered on the second count does not affect an acquittal on the third count. *Weinecke v. State*, 34 Neb. 14. The verdict was not inconsistent, and the motion in arrest of judgment was properly overruled.

No prejudicial error appears in the record; the proof was positive and clear; and the judgment of conviction should stand.

AFFIRMED.