MAY L. ENYEART, APPELLEE, V. CITY OF LINCOLN, APPELLANT.

285 N. W. 314

FILED APRIL 14, 1939.   No. 30449.

*Ralph P. Wilson, Clarence G. Miles* and *Frederick H. Wagener*, for appellant.

*Sterling F. Mutz* and *Robert S. Stauffer, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This is an action in tort for damages sustained by plaintiff occasioned by a sidewalk alleged to be defectively constructed and maintained by the municipality wherein the same was situated. There was a verdict and judgment for plaintiff in the sum of $3,500, and from the order of the trial court overruling its motion for a new trial, the defendant city appeals.

The proof shows that plaintiff, on December 7, 1935, at 7:15 p. m., while in the exercise of proper care, stepped upon, slipped and fell on the steps leading from the public sidewalk which was above the level of Forty-fifth street, as she was descending to that street at the southwest corner of the intersection of Forty-fifth and St. Paul streets in the defendant city. As a result of the fall plaintiff's right wrist was broken, and she sustained injuries also to her back and hip. Evidence in the record, if believed, fairly establishes that prior to its annexation by the city of Lincoln, on September 27, 1926, the proper municipal authorities of the then city of University Place had negligently and defectively constructed the sidewalk, including the steps, in question, without providing a proper and sufficient foundation therefor and with width alleged to be too narrow for the use intended. The steps in question were constructed $18\frac{1}{4}$ inches above the curb, though by the ordinance then in force of the city of University Place such constructions were limited to not more than 6 inches above the curb. For a considerable distance from the place of the accident, "quite a length of the sidewalk" extending to the west had been constructed without "expansion joints." As explained by witnesses for plaintiff, when expansion joints are not employed in such a construction, in time "you have

a bulge in the walk * * * due to extreme heat." The evidence as an entirety sustains the conclusion in the present case that the dangerous condition of the steps occasioning the accident in suit was due to the improper construction of the sidewalk of which they formed a part, and also the insufficient foundation on which they rested. The original responsibility for this condition was properly chargeable to the city of University Place, the original constructor thereof. On September 27, 1926, the city of University Place was annexed by the city of Lincoln, defendant herein. Thereafter repeated notices were given to the proper officials of the city of Lincoln of the situation existing at the intersection of Forty-fifth and St. Paul streets, and this municipality is properly chargeable with knowledge thereof received after the completion of the annexation and long prior to the occurrence of the accident here in suit.

Appellant's first challenge to the correctness of the judgment is based upon the terms of section 38 of its "Home Rule Charter," which provides, viz.:

"The city shall be absolutely exempt from liability for damages or injuries suffered or sustained by reason of defective public ways or the sidewalks thereof within the city, unless actual notice in writing of such defect shall have been filed with the city clerk at least five days before the occurrence of such injury or damage," etc.

It may be conceded that, while the record contains ample proof to charge the city of Lincoln with actual knowledge of the situation, the giving of the technical notice prescribed was not established by the proof.

But, where the ground of the action is positive misfeasance on the part of the corporation, its officers or servants, or by others under its authority, in doing acts which cause the streets or sidewalks to be unsafe or out of repair, no other notice to the corporation of the condition of the street is essential to its liability and section 38 of the home rule charter appears inapplicable.

Thus, in *Updike v. City of Omaha,* 87 Neb. 228, 127 N. W. 229, where a substantially identical clause was before this

court for construction, we held that the requirement of a written notice of "defective public ways or sidewalks thereof" to be filed with the (city) clerk five days before the occurrence of the injury complained of has no application to defects caused by the city itself in negligently constructing the defective work complained of. See, also, *Tewksbury v. City of Lincoln*, 84 Neb. 571, 121 N. W. 994; *McMasters v. City of Lincoln*, 101 Neb. 278, 163 N. W. 319.

It must be conceded that, under the facts in the instant case, the statutory five days' notice requirement would be wholly inapplicable so far as the city of University Place was concerned, and would afford it no defense.

Section 1, article I of the Lincoln home rule charter, provides:

"The municipal corporation now existing and known as the City of Lincoln shall remain and continue a body politic and corporate, by name the City of Lincoln, and as such shall have perpetual succession."

Section 3, article I of this home rule charter, provides:

"The City of Lincoln shall remain vested with and continue to have, hold and enjoy all property, rights of property and rights of action of every nature and description now pertaining to this municipality, and is hereby declared to be the successor of the same. It shall be subject to all the liabilities that now exist against this municipality."

Section 15-113, Comp. St. 1929, provides, in part, that, upon consolidation of another municipality with a city of the first class, "such city of the first class shall succeed to all property and property rights of every kind, contracts, obligations and choses in action of every kind held by or belonging to the city or village consolidated with it and such city of the first class shall be liable for and assume and carry out all valid contracts, obligations, franchises and licenses of any such city or village so consolidated with it," etc.

Section 15-117, Comp. St. 1929, provides, in part, that, upon consolidation, "all rights of action existing against any city of the second class or village consolidated with

such city of the first class at the time of such consolidation, or accruing thereafter on account of any transaction had with or under any law or ordinance of such city of the second class or village, may be prosecuted against such city of the first class as consolidated."

To arrive at the legislative intent thereby expressed, these various products of legislative action should be read and considered in the light of the following canons of construction, viz.:

The legislative intent is the cardinal rule in the construction of statutes. *Hubbell Bank v. Bryan,* 124 Neb. 51, 245 N. W. 20; *Peterson v. School District,* 124 Neb. 352, 246 N. W. 723; *Smith v. State,* 124 Neb. 587, 247 N. W. 421; *McQuiston v. Griffith,* 128 Neb. 260, 258 N. W. 553.

All statutes relating to the same subject are considered as parts of homogeneous system and later statutes are considered as supplementary to preceding enactments. So, also, statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together. *Morrill County v. Bliss,* 125 Neb. 97, 249 N. W. 98; *McQuiston v. Griffith,* 128 Neb. 260, 258 N. W. 553; *Jones v. York County,* 26 Fed. (2d) 623.

"A clause, paragraph or provision in a section should be construed in connection with all other clauses, paragraphs and provisions in the same and other sections of the statute connected therewith or relating thereto." *State v. Thomas,* 127 Neb. 891, 257 N. W. 265.

"A statute of doubtful meaning should be construed, if reasonably possible, so as to carry out the purpose and intention of the legislature, and when this purpose is manifest it will prevail over a seeming conflict in the language. The meaning must be ascertained from a consideration of all that is said in the act upon the same subject-matter, and later expressions will usually control the language used in preceding portions of the statute." *State v. Ure,* 91 Neb. 31, 135 N. W. 224.

In consideration of questions similar to what is here presented, Judge Dillon has well stated, viz.:

"It has been well observed that in the infinite diversity of subjects which arise for judicial determination, 'judgment in most cases consists less in the application of a precise text, than in a combination of several texts, which lead to a decision rather than contain it.' Such decision and judgment are the result of the interpretation of various clauses and texts, with the definite purpose of ascertaining the intention and will of the legislature, in respect of a matter where it is not in terms expressed one way or the other, but is necessarily left to be collected from a consideration of all of the enactments bearing upon it." 4 Dillon, Municipal Corporations (5th ed.) sec. 1715.

It is obvious that the legislative intent evidenced by section 1, article I of the home rule charter, above quoted, was not the creation of new, distinct and separate corporate entity. The statutory municipal corporation previously created by the statutes relating to "all cities having more than forty thousand and less than one hundred thousand inhabitants" (Comp. St. 1929, sec. 15-101) was, under the new charter, merely to "remain and continue a body politic and corporate," with nature and attributes wholly unimpaired.

It would seem to follow that powers, rights, and liabilities which the statutory municipal corporation previously possessed under the statute of its creation, because of its inherent nature, were necessarily continued, except in so far as expressly or by necessary implication modified by the terms of the home rule charter later adopted by the city of Lincoln, of which section 1, article I, quoted above, constitutes a part. While the state Constitution provides that the municipal charter adopted under section 2, article XI of the Constitution, shall "become the charter of said city, and supersede any existing charter and all amendments thereof," such succession, in so far as the newly adopted charter expressed the public intent that what previously existed should continue, would involve no change as to rights, duties, or liabilities so referred to either expressly or by necessary implication.

This conclusion is quite in harmony with the limitation that the home rule charter, so adopted, must be "consistent with and subject to the Constitution and Laws of this state." Const. art. XI, sec. 2.

Again, section 3, article I of the Lincoln home rule charter, clearly evinces a legislative intent to which the proposition as stated is indeed conformable. In this connection, the words, "It shall be subject to all liabilities that now exist against this municipality," are significant. "Liability" is a broad term, one of large and most comprehensive significance. In a broad sense, it includes the condition of being actually or potentially subject to an obligation. *Coulter Dry Goods Co. v. Wentworth,* 171 Cal. 500, 153 Pac. 939; *State v. Sheets,* 26 Utah, 105, 72 Pac. 334; *United Cigarette Machine Co. v. Winston Cigarette Machine Co.,* 194 Fed. 947, 960, 114 C. C. A. 583.

Further, "liability" includes the condition of being responsible for a possible or actual loss, penalty, evil, expense or burden. *Wentz v. State,* 108 Neb. 597, 188 N. W. 467; *Reynolds v. City of Waterville,* 92 Me. 292, 319, 42 Atl. 553; *White v. Greene,* 70 N. W. (Ia.) 182; *Feil v. City of Coeur D'Alene,* 23 Idaho, 32, 129 Pac. 643.

Also, it includes the condition of one being charged with a duty which may be judicially enforced. *Wood v. Currey,* 57 Cal. 208.

So, too, a "liability" may be absolute or contingent. *Cochran v. United States,* 157 U. S. 286, 296, 15 S. Ct. 628, 39 L. Ed. 704; *East Islip First Nat. Bank v. National Surety Co.,* 228 N. Y. 469, 127 N. E. 479; *Daniels v. Goff,* 192 Ky. 15, 232 S. W. 66; *Hunt v. Ward,* 99 Cal. 612, 34 Pac. 335, 37 Am. St. Rep. 87.

"Liability" is not restricted to such as are absolute or exclude the idea of contingency. *Wentz v. State,* 108 Neb. 597, 188 N. W. 467. In fact, it is more frequently used in the latter sense than in the former. *Cochran v. United States,* 157 U. S. 286, 15 S. Ct. 628, 39 L. Ed. 704; *Albert v. Gibson,* 141 Mich. 698, 105 N. W. 19.

In the light of these authorities, and when we recur to

the provisions of sections 15-113 and 15-117, Comp. St. 1929, we find nothing in the home rule charter of the city of Lincoln inconsistent with the legislative intent that the provisions thereof shall continue in full force and effect.

It follows that, upon a consolidation with another municipality, the city of Lincoln became liable for, assumed, and was required to carry out all valid contracts and obligations of such city so consolidated with it.

Now, when the term "obligation" is used in a statute, its significance must be gathered from, and governed by, the purpose and context of the enactment. It may be said to be a generic word, derived from the Latin substantive "obligatio," having many, wide, and varied meanings, according to the context in which it is used. It has two well-defined legal meanings, one of which includes liability arising from tortious conduct. Where, in a legislative provision, it is used with reference to legal duty or liability, such duty or liability may arise from actionable tortious conduct. See *Exchange Bank v. Ford,* 7 Colo. 314, 3 Pac. 449; *Sawyer v. Armstrong,* 23 Colo. 287, 47 Pac. 391.

In the light of the foregoing authorities, the legislative purpose evidenced by section 15-117, Comp. St. 1929, providing that "all rights of action existing against any city of the second class * * * consolidated with such city of the first class at the time of such consolidation, or *accruing thereafter on account of any transaction had with or under any law or ordinance of such city* of the second class *may be prosecuted against such city of the first class* as consolidated" (italics supplied), is clear and obvious.

Applying the canons of construction to the texts we have quoted, and construing them in the light of the principles and purposes they clearly evidence, leads to the conclusion that the city of Lincoln, by the annexation of the city of University Place, as to rights, obligations, and duties imposed upon and possessed by the latter, whether actual or contingent, tortious or on contract, became the successor of the latter, and subject to the same and identical conditions that were binding upon the city of University Place.

In other words, it succeeded in full measure to the duty to keep and maintain the streets of what was the city of University Place (which include the sidewalks thereof) in a reasonably safe condition for travel in the ordinary modes, by night as well as by day; and where defects existed therein due to the negligence of the city of University Place, amounting to positive misfeasance therein on part of the annexed corporation, its officers and servants, or by others under its authority or direction, the civil liability therefor imposed upon the latter by the fact of annexation became the liability of the former, and it must respond accordingly in damages.

It follows that, under the facts of this case, the failure of the plaintiff to file the statutory five days' notice with the city clerk of Lincoln afforded the city of Lincoln no defense.

Further, appellant challenges the right to recover in the instant case, asserting that, viz.: "Where a person voluntarily elects to use a sidewalk which he knows to be unsafe or dangerous, with knowledge of another safe and convenient way, he thereby assumes the risk of the traveled way and if injured is guilty of contributory negligence in a degree more than slight, which precludes his recovery." And it cites the case of *Hupfer v. City of North Platte,* 134 Neb. 585, 279 N. W. 168.

However, a consideration of the evidence in the instant case, we believe, clearly brings it within the doctrine announced in *Pinches v. Village of Dickens,* 127 Neb. 239, 254 N. W. 877, and *City of Beatrice v. Forbes,* 74 Neb. 125, 103 N. W. 1069. In the latter case, the rule is stated as follows, viz.: "Contributory negligence is not imputable to him as a matter of law from the mere fact that he attempts to pass over a walk that is obstructed or otherwise out of repair, provided that the obstruction or other defect is such that a man of ordinary intelligence would reasonably believe that, with proper care and caution, he could pass with safety notwithstanding the defect."

Neither may the city's challenge to the verdict as ex-

cessive be sustained. The accident caused a comminuted fracture of the radius and ulna of the right arm just above the wrist. There is now a widening of the wrist which of course interferes with the normal movements of the wrist in all directions. When more than the amount of motion with which plaintiff can use the hand freely is attempted, she suffers pain. She has about a 50 per cent. use of the second and third fingers. The ordinary use of the right hand is impaired. These conditions are permanent. She testifies that as a result of the accident her right hip and leg were severely bruised and her back injured. Her back still remains weak, and she still continued to be bothered by the broken arm at the time she testified at the trial. Her hospital bills to date of trial were $164.10. Prior to her injury she had been a dressmaker, and in that vocation had an average earning of $15 a week. Since her accident, wholly due to her present physical condition, she has been unable to earn more than $4 a week. She has been subjected to pain and suffering. Her expectancy of life, as shown by the Carlisle table, is 12.81 years. It is deemed that, in view of the nature and extent of the injuries suffered, the amount of the judgment recovered is not excessive.

The challenge to instructions and complaints of admission and rejection of evidence have received our due consideration, and in view of the issues, the basis of recovery allowed, and the record as an entirety, we do not deem the matters complained of as prejudicial to the rights of defendant city.

It follows that the judgment of the district court is, in all respects, correct, and it is

AFFIRMED.