STATE OF NEBRASKA, APPELLEE, V. JACK SMITH, APPELLANT.

192 N. W. 2d 158

Filed December 3, 1971. No. 37999.

S. J. Albracht, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold S. Salter, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Defendant, Jack Smith, was convicted of having a narcotic drug, cannabis, in his possession with the intent to sell and distribute it. He alleges three assignments of error: (1) The failure of the State to prove its case; (2) the failure of the court to instruct the jury that the police officers must have had reasonable cause to believe he was predisposed to commit the act to legally entrap him; and (3) the failure of the court to admonish the jury that his acts of January 16, 1970, could not be considered as "prior conduct." We affirm.

Defendant, who had a previous felony conviction, testified in his own defense. He testified that he was entrapped by the sheriff. His partner, Daugherty, secreted marijuana in his filing cabinet as well as in the basement of his home which Daugherty used to store ceramics. Defendant adduced evidence that Yanovich, an associate of Daugherty, was an informer and tried to sell information to the Papillion police and to the federal authorities. He admitted that on January 16, 1970, at the request of Yanovich, he delivered a sealed package from a filing cabinet in his office to Yanovich at the Papillion airport. Yanovich on that occasion was sitting in the car with another individual later identified as Jerry Hannon. Defendant handed the package to Hannon and received nothing for it. He did not know what was in the package until the next day when Yanovich told him that it contained marijuana, and that Daugherty had marijuana stored in the defendant's

basement. Defendant then testified that he attempted to contact Daugherty and it was not until a couple of days later that he saw Daugherty and demanded that he remove the marijuana from his basement.

On the 20th of January defendant received a telephone call from someone wanting to get in touch with Yanovich. This individual identified himself as the one who had been with Yanovich at the airport, so defendant gave him Daugherty's telephone number. About 2 or 3 hours later, Daugherty and Yanovich came to his home. They had two bags with them. They wanted defendant to deliver one of the bags to Tara Plaza and leave the other in his shop, and they offered him $100 to deliver the bag to an individual at Tara Plaza. Defendant agreed to do so. He parked his car alongside the only one parked at the Tara Plaza and walked over to that car, which corresponded to the description given him. He recognized the individual in the car as the one who had been with Yanovich the evening of January 16th. Defendant delivered the package and received five $20 bills. Deputy sheriff Barrett then popped out of the trunk of the car and defendant was arrested.

The evidence of Jerry Hannon, who was an undercover agent for the sheriff, is in direct conflict with that of the defendant. It is Hannon's testimony that on the evening of January 16 he gave the defendant $100 supplied by the sheriff for the package he delivered, and asked him if he could get more, and the defendant replied: " 'Yeah.' " Hannon further testified that he called the defendant on the 20th and set up a buy. The testimony is as follows: "I said, 'This is Jerry and I would like to buy a pound.' And he said, 'I don't know if I can get to you.' He said it wouldn't be until about 8:30 that he could make it. And I told him I was at the Cabay Lounge; how about meeting me there at the lot? 'I'll meet you at 8:30.' " Hannon then notified the sheriff, carrying the marked money in his billfold

to make the buy, and went to the agreed location with deputy sheriff Barrett who hid in the trunk of the car. Hannon further testified: "I motioned for him to come over to my car; and he came over and got in. And I saw that he had more than a pound of marijuana. And I said, 'I ain't got enough to buy that, Jack. All I've got is a hundred dollars.' He said, 'I didn't have time to cut it down. I'll do you a favor, and you take it.' I gave him the money; and he put it in his billfold. And he said, 'I'll see you later.' And Mike jumped out of the trunk and arrested him."

Facts constituting entrapment, which is in the nature of an affirmative defense, are ordinarily to be determined by the jury or the trier of fact in each individual case, and its findings will be disturbed only when the preponderance of the evidence against such findings is great and they clearly appear to be wrong, or when the findings are clearly contrary to law. State v. Ransburg, 181 Neb. 352, 148 N. W. 2d 324.

In the Ransburg case, we followed the majority holding in Sorrells v. United States, 287 U. S. 435, 53 S. Ct. 210, 77 L. Ed. 413, 86 A. L. R. 249, and held that where a person has no previous intent or no previous purpose to violate the law but does so only because persuaded or induced to commit the act by law enforcement agents, he is entitled to the defense of unlawful entrapment because the law as a matter of policy forbids a conviction. On the other hand, where a person already has the readiness or willingness to violate the law, the mere fact that an officer provides what appears to be a favorable opportunity for such violation, or merely seeks to collect evidence of the offense, does not constitute unlawful entrapment and is no defense.

The mere fact that artifice or stratagem may be employed to apprehend those engaged in criminal activity does not in and of itself give rise to the defense of entrapment. There was a serious conflict in the evidence and the issue became one of credibility for the jury.

On the record, the jury could readily find there was no enticement herein; that the State did no more than present an opportunity which the defendant accepted.

We have reviewed the instructions of the court and find that they are proper under the evidence adduced herein. The court fully instructed on defendant's defense and put the burden on the State to prove beyond a reasonable doubt that defendant was not improperly induced to commit any unlawful conduct.

We find the evidence sufficient to sustain the conviction and affirm the judgment.

AFFIRMED.