STATE OF NEBRASKA, APPELLEE, v. LEE GURULE, APPELLANT.
234 N. W. 2d 603

Filed October 30, 1975. No. 39997.

John J. Battershell of Cunningham Law Office, for appellant.

Paul L. Douglas, Attorney General, and Gary B. Schneider, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and KUNS, Retired District Judge.

BOSLAUGH, J.

The defendant in this case was charged in two counts with delivery of marijuana. The jury returned a verdict of guilty on both counts and he was sentenced to imprisonment for 18 months to 4 years on each count, the sentences to run concurrently. The defendant has appealed and his assignments of error relate to misconduct of the special prosecutor, the instructions to the jury, and whether the sentence was excessive.

The evidence shows that the defendant sold marijuana to Lawrence Dillon, an undercover agent employed by the Nebraska State Patrol, on March 10, 1974, and again on March 13, 1974. The defendant admitted the transactions took place but attempted to characterize the sales as favors to Dillon.

The alleged misconduct of the special prosecutor related to three evidentiary matters. Dillon testified that on one occasion the defendant gave a marijuana cigarette to the 4-year-old son of the woman who was living with the defendant. The defendant objected to this testimony and other similar evidence on the ground that it was irrelevant. The objection was overruled and the

evidence was received. The testimony had some slight relevance to the issue of intent since the defendant was charged with delivery of marijuana and not mere possession. Testimony of this nature tends to be highly prejudicial and ordinarily should be excluded. However, its admissibility here was a matter within the discretion of the trial court and we do not find it to have been prejudicial error in this case.

In relating the events at the defendant's home preceding the sale on March 10, 1974, Dillon described a handgun displayed by the defendant as a "Saturday Night Special." The term seems to be one in common usage, but upon objection by the defendant, the term was stricken, and the word "handgun" substituted. The testimony relating to the handgun had no real relevance to any issue in the case and should have been omitted from the State's case. However, it did not prevent the defendant from having a fair trial and does not require that the judgment be reversed.

The defendant called a number of witnesses who testified that they knew the defendant; smoked marijuana and had purchased it locally; but had never purchased it from the defendant. The special prosecutor asked each of these witnesses whether the laws prohibiting the delivery of marijuana should be abolished or not enforced. In each instance the defendant's objections to the questions were sustained and the witnesses were not permitted to answer.

The questions were improper and the special prosecutor was advised by the trial court at a conference at the bench that the questions would not be permitted. Nevertheless, the special prosecutor continued to question each witness in the same manner. This was misconduct and if prejudicial would have required a reversal. We do not believe it was prejudicial in this case for several reasons. There was no dispute about the essential facts, the delivery of marijuana on March 10 and March 13, 1974. The attitude of these witnesses toward the drug

laws was apparent to the jury from their other testimony. In each instance the defendant's objections to the question were sustained. Under these circumstances there was no prejudice to the defendant. See State v. Country, 184 Neb. 493, 168 N. W. 2d 918.

The defendant requested three instructions to be given to the jury, all of which were refused. The first requested instruction related to the defense of entrapment. Instruction No. 9 given by the trial court was the Nebraska Jury Instruction on entrapment, NJI No. 14.34, verbatim.

Where a person has no previous intent or purpose to violate the law, but does so only because persuaded or induced to commit the act by law enforcement agents, he is entitled to the defense of entrapment. But where a person already has the readiness or willingness to violate the law, the fact that an officer apparently provides a favorable opportunity for the violation does not constitute entrapment. State v. Ransburg, 181 Neb. 352, 148 N. W. 2d 324; State v. Smith, 187 Neb. 511, 192 N. W. 2d 158; State v. Young, 190 Neb. 325, 208 N. W. 2d 267.

The Nebraska Jury Instruction is phrased in terms of "improper" inducement. The representations made by an undercover agent are almost always false in some particulars and, to some extent, may constitute an inducement to commit the crime. It is improper inducement that gives rise to the defense of entrapment. Overpersuasion, undue pressure, or coercion may constitute improper inducement and entrapment. State v. Ransburg, *supra*. The important consideration in determining whether entrapment occurred is the predisposition or readiness on the part of the defendant to commit the crime. United States v. Russell, 411 U. S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366. Reluctance or unwillingness on the part of the defendant may indicate an absence of predisposition or readiness to commit the offense. These matters are all covered in the Nebraska

Jury Instruction, and we find no error in regard to Instruction No. 9.

The second instruction requested by the defendant was a cautionary instruction concerning the weight and credibility to be given to a paid informer. The trial court gave no instruction of this nature.

Where informers, detectives, or other persons employed to hunt up testimony against the accused are called to testify against him, he is entitled to an instruction to the jury that in weighing their testimony greater care should be exercised than in the case of witnesses who are wholly disinterested. The accused is not entitled to a cautionary instruction where the witnesses against him are regular public law enforcement officers. State v. Goff, 174 Neb. 548, 118 N. W. 2d 625.

The principal witness for the State in this case was the undercover agent Dillon. Dillon was employed by the State to investigate and gather evidence of drug violations. He was not a regular officer in the sense of a permanent employee, but he was paid a weekly salary while employed and was not employed to seek evidence against a particular person only.

In a similar factual situation, the Alaska Supreme Court held that no cautionary instruction was required. Turner v. State (Alas.), 515 P. 2d 384. We think this was the correct rule in this case. There was nothing to indicate that Dillon had any greater direct personal interest in supplying evidence against the defendant than any other public officer. We find no error in refusing the requested instruction.

The third requested instruction related to the testimony of an accomplice. It had no relevance to any testimony in the case and was properly refused.

The defendant is approximately 34 years of age. He has a lengthy arrest record and has been convicted of second offense joyriding and possession of narcotic drugs. In view of his past record and the serious nature

of the offense, there was no abuse of discretion. The sentences imposed were not excessive.

The judgment of the District Court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

A reading of the record in this case establishes a systematic attempt by the special prosecutor to inflame the jury against the defendant by the use or attempted introduction of evidence which was inadmissible or had only remote, if any, relevance to the charge against the defendant. In several instances the misconduct by the prosecutor consisted of asking improper questions of several witnesses in succession, after the trial court had advised counsel for both parties that such evidence was not admissible and that the particular questions asked were objectionable, and had stated that the court would sustain any objection that might be made to such questions. In spite of that admonition, the special prosecutor asked the same questions in one form or another on at least 10 subsequent occasions and of at least 5 different defense witnesses. Objections were sustained on each occasion but apparently the special prosecutor was not admonished. The questions were inquiries about the witnesses' opinions of the Nebraska laws prohibiting delivery or distribution of marijuana. The questions were clearly objectionable, as the court had advised, and the only purpose such questions could have had was to discredit the defendant and his witnesses.

Typical of the extraneous material dragged in by the special prosecutor with the assistance of the chief witness for the State was the testimony that the defendant kept a handgun in his residence. The gun was referred to as a "Saturday Night Special" by the chief witness for the prosecution. Objections to that line of questioning were sustained but had to be repeated on three subsequent occasions when the special prosecutor continued with the subject. Obviously, the fact that the defendant kept a handgun in his residence had absolutely no

relevance to a charge of possession of marijuana with intent to deliver. The testimony could have been injected for no other purpose than to prejudice the defendant in the eyes of the jury.

The defendant was charged with two counts of possession of marijuana with intent to distribute, one on March 10, 1974, and the other on the evening of March 13, 1974. The chief witness for the prosecution, who purchased marijuana from the defendant on both occasions, testified in full as to each incident. In addition, the same witness was permitted to testify, over objection, as to acts constituting other separate drug crimes upon the theory that they were offered to prove intent and knowledge. At least three crimes other than the two counts charged were testified to at length by the chief witness for the prosecution. The most blatant of the three was testimony that the defendant had given a lighted marijuana cigarette to the 4-year-old son of the woman with whom the defendant was living. The incident occurred at about noon on March 13, 1974, and was in no way connected to the subsequent sale of marijuana by the defendant several hours later.

The special prosecutor at the time of impaneling the jury announced to the panel his intention to prove that the defendant had given marijuana to a 4-year-old child. The defendant made a motion for mistrial prior to the impaneling of the jury based upon the statements of the special prosecutor. Motion for mistrial was renewed during the testimony of the chief witness for the State. That motion again was grounded upon the remarks of counsel to the jury panel and also upon the introduction of the evidence as to the handgun or Saturday Night Special. A motion for mistrial was again made when the defendant's objections to the evidence involving the giving of marijuana to the 4-year-old child had been overruled. Each motion for mistrial was overruled. The failure to sustain the motion for mistrial was error.

The general rule is that testimony concerning other

crimes is not admissible. State v. Casados, 188 Neb. 91, 195 N. W. 2d 210. There are exceptions where the elements of motive or a particular criminal intent are relevant. See State v. Kirby, 185 Neb. 240, 175 N. W. 2d 87.

The majority opinion of this court acknowledges that testimony as to other crimes, and particularly that involving a 4-year-old child, tends to be highly prejudicial and ordinarily should be excluded. The majority, however, find that it was marginally admissible and was not prejudicial error in this particular case. It is difficult to understand how much of the testimony admitted here could have been anything but prejudicial. "A trial court, in exercising its discretion to admit or exclude evidence of a prior crime, is required to balance its tendency to unduly prejudice the accused against its tendency to prove a material fact * * *.

"If the proffered evidence does not have substantial relevance outweighing its potentially unduly prejudicial effect, its admission is an abuse of discretion." United States v. Phillips, 401 F. 2d 301 (7th Cir., 1968).

As a general rule, evidence of marginally relevant prior or contemporaneous criminal conduct of an accused is not admissible in a trial of the accused because of its tendency to prejudice and inflame the jury and possibly deprive the accused of a fair trial on the substantive crime for which he is charged. United States v. Gebhart, 441 F. 2d 1261, cert. den. 404 U. S. 855, 92 S. Ct. 97, 30 L. Ed. 2d 96.

The Eighth Circuit has laid down a four-point test which must be met before evidence of unrelated crimes can be admitted. It must be shown that "(1) an issue on which other crime evidence may be received is raised; (2) that the proffered evidence is relevant to that issue; (3) that the evidence is clear and convincing; and (4) that the probative worth outweighs the probable prejudicial impact." United States v. Clemons, 503 F. 2d 486 (8th Cir., 1974).

As this court said in State v. Casados, 188 Neb. 91,

195 N. W. 2d 210: "It is a fundamental concept of our criminal law that an accused, whether guilty or innocent, is entitled to a fair trial. It is not only the duty of the trial court but of the prosecutor as well to see that he gets one. A prosecution solidly based upon the law and the facts and supported by sound reasoning does not require bolstering by appeals to passion and prejudice."

Standard 5.6(b), ABA Standards Relating to the Prosecution Function, provides: "It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury."

The basic reason for the rule excluding evidence of other crimes is that such evidence is apt to result in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged. In the context of the record here, there can be little doubt that the trial was not conducted in such a manner as to be fair and impartial to the rights of the accused. A defendant is entitled to a fair trial, even if he is guilty. The right is not limited to a case in which an appellate court thinks the defendant is or might be innocent.

One other issue remains to be disposed of. The defendant requested that the jury be given the cautionary instruction, NJI No. 14.59: "In weighing the testimony of persons employed to find evidence against the accused, you should exercise greater care than in the case of a witness who is wholly disinterested." The majority opinion holds that where informers, detectives, or other persons are employed to hunt up testimony against the accused, and are called to testify against him, he is entitled to such an instruction; but that he is not entitled to such an instruction where the witnesses against him

are "regular" public law enforcement officers. It also holds that an informer paid a weekly salary and expenses to investigate and gather evidence of drug violations in a particular locality is, in effect, a "regular" law enforcement officer and the cautionary instruction is not required.

The informer here was designated a "special employee" of the state patrol and was paid from the patrol's drug fund. The evidence establishes that such special employees are not treated like other employees. They have none of the direct or fringe benefits of regular employees. They cannot make arrests. They are not to carry weapons. They are paid only so long as they are working, and in order to maintain the job, it is necessary for them to produce evidence and cases for prosecution. The informer here was sent to McCook by the patrol to conduct a drug investigation and was given a list of names and areas to investigate. The defendant's name was not on that list. It would be strange indeed if individuals whose names appeared on the list were entitled to have NJI No. 14.59 given while those who were not listed would not be entitled to the instruction. It is completely illusory to assume, when a person is employed especially to procure drug evidence in a particular local area and given a list of suspects, that he is not an informer as to anyone whose name is not on the list. It is wholly illogical to assume that a "special employee" under the facts here is somehow different from any other paid informer.

The reason for the rule requiring an instruction such as NJI No. 14.59 is almost as old as the State. It is " 'because of the natural and unavoidable tendency and bias of the mind of such person to construe everything as evidence against the accused, and to disregard everything which does not tend to support their preconceived opinions of the matter in which such person is engaged.' " Preuit v. People, 5 Neb. 377. The bias of the informer here is apparent from the record. The cau-

tionary instruction should have been given and the failure to give it only emphasized the prejudice created by the prosecutorial misconduct referred to.

While each case must be determined on its own facts, the record and circumstances here are more than sufficient to establish that the defendant did not receive a fair trial. The judgment should be reversed and the cause remanded.

KUNS, Retired District Judge, joins in this dissent.