STATE OF NEBRASKA, APPELLEE, V. DONALD STEINMARK, APPELLANT.

239 N. W. 2d 495

Filed March 4, 1976. Nos. 40171, 40172.

Andrew J. McMullen and Richard Hove, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

The defendant was convicted on two counts of delivery of a controlled substance in violation of section 28-4,125, R. S. Supp., 1974. He was given a sentence of 3 to 9

years on each count, with the sentences to run consecutively. The defendant appeals. We affirm the judgment and sentences of the District Court.

The defendant was charged on three counts of delivering a controlled substance; first, for the delivery of amphetamines on December 12, 1974; second, for the delivery of marijuana on December 16, 1974; and third, for another delivery of marijuana on December 19, 1974. The prosecution's only witness with respect to the delivery of the controlled substances was an informer, Mr. Landrie. Landrie testified that the defendant sold him the controlled substances on the three dates listed above. Numerous defense witnesses contradicted Landrie's testimony relating to the defendant's presence on December 16, 1974, when Landrie testified that he had purchased marijuana from the defendant. Based on Landrie's testimony, the District Court, sitting without a jury, found the defendant guilty on the first and third counts but acquitted the defendant on the second court.

The defendant appeals the convictions on three grounds. First, the defendant contends that, once a witness has willfully sworn falsely at a trial, his testimony cannot be sufficient, if uncorroborated, to support a finding of guilty.

For authority, the defendant cites the case of Jahnke v. State, on rehearing, 68 Neb. 181, 104 N. W. 154. The defendant's reliance on Jahnke is misplaced. Jahnke involved an accomplice, rather than an ordinary disinterested witness. An accomplice' testimony by its very nature raises some doubts as to its veracity. In Jahnke the accomplice told two directly contradictory stories under oath. Under those circumstances, it was reasonable for the court to require corroboration of his testimony. Those circumstances which require corroboration in Jahnke do not exist in the present case. Landrie was not an accomplice of the defendant. There is no proof that Landrie lied under oath. There was testimony which conflicted with Landrie's testimony relating to the

defendant's whereabouts on December 16, 1974. But this is not proof that Landrie lied under oath. The fact that the District Court acquitted the defendant on the second count does not mean that the District Court found that Landrie had lied. Rather, the acquittal could mean that the District Court found the prosecution had not carried its burden of proving the defendant's guilt beyond a reasonable doubt.

The defendant next contends that where identical evidence is offered on several counts, and the judge acquits on one count and convicts on the other counts, the verdicts are reversibly inconsistent and the convictions cannot stand. In essence, what the defendant argues is that the District Court acquitted the defendant under one count, and since the same evidence was used to convict him under the other two counts, the acquittal and the two convictions are inconsistent. However, the defendant's contention fails because: First, the evidence relied on in the different counts is not identical, the witness is the same, but not his testimony; second, this court has affirmed convictions in which information in multiple counts resulted in conviction on one count and acquittal on the other count. In Weinecke v. State, 34 Neb. 14, 51 N. W. 307, the court stated: "The evidence would have justified a conviction under both counts of the information. Both offenses were committed by the same person and at the same time. It is, indeed, unexplainable how the jury arrived at the verdict returned. As a separate offense is charged in each count, the verdict is not void. The defendant cannot complain because he was acquitted of the first offense. The error was in his favor." Then, in Wentz v. State, 108 Neb. 597, 188 N. W. 467 (1922), in which it was claimed that a not guilty verdict on count two required an acquittal on count three, on which a guilty verdict was rendered, the court stated as follows: "The second and third counts charge different offenses, and, while it may be that the same proof would have justified a con-

viction on both counts, the fact that a verdict of not guilty was rendered on the second count does not affect (require) an acquittal on the third count."

The defendant's final contention is that the District Court erroneously refused to order the prosecution to stipulate that the results of a polygraph examination of the defendant would be admissible into evidence at the trial. By motion, the defendant offered to take a polygraph test and have the test be admitted into evidence, regardless of the results of the test. The District Court correctly denied the motion.

We have consistently held that polygraph examinations are not admissible into evidence in this state. In Parker v. State, 164 Neb. 614, 83 N. W. 2d 347, this court stated that: "The polygraph, commonly known as a lie detector, used for determining the truthfulness of testimony has not yet gained such standing and scientific recognition as to justify the admission of expert testimony deduced from tests made under such theory." See, also, State v. Temple, 192 Neb. 442, 222 N. W. 2d 356.

The decision of the District Court is correct and is affirmed.

AFFIRMED.

BRODKEY, J., concurs in the result.

McCOWN, J., dissenting.

On each of the three counts of delivery of a controlled substance, the State's only witness as to delivery by the defendant was Dennis Landrie. The testimony of this chief witness for the prosecution was the sole foundation upon which all three counts rested. The two regular police officers under whom Landrie was working simply confirmed that after Landrie had made a purchase or purchases, he would report to them; put on tape his account of the circumstances under which, and the person from whom, he obtained the substance; and deliver the substances to them for preservation as evidence. There was no evidence that the regular of-

ficers verified or checked the accuracy of his reports, other than to have the substances analyzed by chemists.

It is not entirely unusual that the chief prosecution witness in a controlled substances case is an undercover agent, but it is almost unbelievable that the prosecution undercover agent here was a three-times convicted felon, whose testimony was uncorroborated by law enforcement officers except to test the substances brought in. The undercover agent was employed by a drug investigator of the State Patrol to gather information against defendants and make undercover purchases of controlled substances in Kearney, Nebraska. He was employed about a week before December 12, 1974, at a compensation of $75 per week, plus expenses. His compensation was raised to $100 per week very shortly and his officer supervisor conceded that his success rate in Kearney had something to do with his rapid increase in pay. He was making $125 per week and expenses at the end of the second week in January, when his employment in Kearney was terminated. An ironic sidelight is that the State Patrol was paying expense claims to a convicted forger simply on his oral request.

The defendant testified in his own defense and flatly denied that he had ever delivered any controlled substance to Landrie. The defendant's testimony was uncontradicted, except by Landrie. The trial court, as the fact finder, acquitted the defendant on one of the three counts. The evidence for defendant overwhelmingly established that defendant could not have been guilty of doing what Landrie said he did at the time and place Landrie said he did it. Charitably it might be said that the undercover agent was mistaken rather than that he lied, but by whatever name it be called, the testimony smelled just the same. On the two counts on which the defendant was convicted, there was more than ample evidence to raise serious doubts as to Landrie's veracity. Both of those alleged deliveries took place in a bar where the defendant had been the bartender for 6

years. No witness testified to corroborate Landrie's story of the purchases from defendant, while every witness who had been in the bar who testified said it did not occur or that he did not see any suspicious conduct. It was perhaps only luck that enabled the defendant to be able to produce witnesses to clear him for the night of December 16th because of the fact that the Liberty Bowl football game was on the bar TV that night and disinterested witnesses could fix the times in their memories specifically. He was not so lucky for the nights of December 12 and December 19. There were many customers in the bar during the hours Landrie testified that he was there on each occasion on which a conviction is based. With the lack of corroboration present in this record, Landrie might have accused any one of them and that individual might have been faced with defending himself against the same charges and the same evidence as the defendant was here.

The responsibility for what occurred here must be placed largely with the prosecutor. It is unfortunate indeed when a criminal prosecution must rest essentially upon the uncorroborated testimony of one witness. It is even more critical if that one witness is a convicted felon. The situation must be weighed carefully by a prosecutor before he puts the power of the State behind the testimony of a witness in a criminal prosecution, particularly when the truthfulness of that testimony is unconfirmed. It is in such situations that a prosecutor ought to take special care to be able to verify, validate, and check the truthfulness of information received from informers. The use of regular law enforcement officers in backup roles ought to consist of more than simply accepting reports and evidence from undercover informants. The investigations here were obviously initiated by the prosecutor or the State Patrol, or both, and apparently not even such elementary precautions as using marked funds for purchases were resorted to. Neither was there any evidence of surveillance to verify collater-

al facts as to delivery. No search warrants were issued nor testified about and if, in fact, any of these methods were used, then the results obviously did not support Landrie's testimony against the defendant or they would have been introduced.

In State v. Gurule, 194 Neb. 618, 234 N. W. 2d 603, this court held that an undercover agent, employed under the identical circumstances as in this case, had no greater personal interest in supplying evidence against the defendant than any other public officer, and that a defendant was not entitled to a cautionary instruction as to the weight and credibility to be given to the informer's testimony. The essence of our holding was that such testimony was to be treated the same as that of regular public law enforcement officers. Under that holding, the employment of an habitual criminal as an undercover agent makes him an instant public law enforcement officer and clothes his testimony with the same aura of reliability as that of a uniformed police officer. When a prosecutor rests a criminal prosecution on the unconfirmed testimony of such an instant police officer, he is inviting the situation which occurred here. Two police officers of the City of Omaha and a deputy county attorney of Douglas County all attempted to testify against Landrie. The trial court excluded all such testimony, even including an offer of proof from a deputy county attorney of Douglas County that Landrie's reputation for truth and veracity was bad. Such conflicts can only be damaging to the public concept of the administration of criminal justice in Nebraska.

Obviously, it is extremely difficult to obtain or employ effective undercover agents whose character and background are equal to those of a regular police officer. The necessities of the circumstances, particularly in controlled substances cases, may well require the services of an informer. When a particular informer is a convicted felon, the duty of a prosecutor to see that the informer's testimony is confirmed is magnified many

times. The law must not allow a criminal conviction to stand which essentially rests only on the story of an habitual criminal, acting as an undercover agent, against the directly contrary testimony of a defendant citizen who has never been convicted of a felony. In this case the defendant had never been charged or convicted of any drug offense, misdemeanor, or felony, prior to these charges.

In the present state of society it is critically important that the controlled substances laws be vigorously and thoroughly enforced. The attainment of that end, however, cannot justify such a complete departure from traditional basic principles of justice. The defendant was acquitted on one count. He should have been acquitted on the other two as well.

CLINTON, J., concurring.

I concur in the majority opinion with the following exception. The statement about the use of polygraph examinations is too broad. I construe the past holdings of this court simply to mean that we may not yet take judicial notice that the results of polygraph examinations are generally admissible in all cases. The result of a polygraph examination might be admissible in some instances if some scientific foundation is laid. The defendant in this case laid no foundation whatever.