ROBERT K. OLSON, APPELLANT, V. CITY OF OMAHA, A MUNICIPAL
CORPORATION, APPELLEE.

441 N.W.2d 149

Filed June 9, 1989.    No. 87-229.

Donald W. Kleine, of Kleine Law Office, for appellant.

Herbert M. Fitle, Omaha City Attorney, and Kent N. Whinnery for appellee.

BOSLAUGH, WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

FAHRNBRUCH, J.

Former Omaha Deputy Chief of Police Robert K. Olson appeals an order of the Douglas County District Court affirming the Omaha Personnel Board's termination of his

employment.

Olson claims the district court erred in not finding the Omaha Personnel Board (Board) erred (1) in admitting the results of a polygraph test of a hostile codefendant at a joint hearing; (2) in consolidating his appeal with the appeal of a codefendant when it was known the codefendant would place the entire blame for any wrongdoing on Olson and when evidence to be admitted in the codefendant's appeal would be inadmissible and prejudicial to Olson's appeal; and (3) in terminating Olson's employment, which was excessive punishment. We affirm.

In an error proceeding involving an administrative agency decision, both the district court and the Supreme Court review the record to determine whether the agency acted within its jurisdiction and whether there is relevant evidence to support the decision. *Wadman v. City of Omaha,* 231 Neb. 819, 438 N.W.2d 749 (1989); *Trolson v. Board of Ed. of Sch. Dist. of Blair,* 229 Neb. 37, 424 N.W.2d 881 (1988). Evidence is sufficient to support an administrative agency's decision if the agency could reasonably find the facts as it did based on the testimony and exhibits contained in the record. *Wadman v. City of Omaha, supra; Trolson v. Board of Ed. of Sch. Dist. of Blair, supra.* In an error proceeding to review a decision by an administrative agency, the reviewing court is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. *Wadman v. City of Omaha, supra; Coffelt v. City of Omaha,* 223 Neb. 108, 388 N.W.2d 467 (1986).

This appeal arises out of an internal police investigation concerning the arrest of John Howell for driving while intoxicated. At the time of Howell's arrest, his brother-in-law was the mayor of Omaha. Howell's father was Douglas County treasurer. In the course of a joint gambling investigation by the Omaha Police Division and the Federal Bureau of Investigation, Howell was observed driving erratically at times and was suspected of driving while intoxicated. As a result of these observations, a determination was made by some of the upper echelon of the Omaha Police Division to institute surveillance of Howell and to arrest him for driving while

intoxicated if probable cause existed. Olson was not among those making the decision. The FBI expressed an interest in monitoring the charge through the court process to determine if anyone attempted to influence the outcome of the case. There is no indication any such monitoring actually occurred.

To avoid discovery of the ongoing gambling investigation, it was decided that the surveillance of Howell would be conducted by the uniform patrol division of the Omaha Police Division. Lt. Timothy Dunning, the Omaha police officer in charge of the gambling investigation, contacted Lt. Anthony Infantino, the officer in charge of the D shift of the uniform patrol division, concerning the surveillance. At that time, Dunning told Infantino that he assumed Infantino's supervisor, Deputy Chief Olson, had been informed of the surveillance. Infantino said he would contact Olson regarding the request.

Infantino developed the surveillance plan. He decided to use two uniformed officers, James Alexander and Tom Martin. They had been involved in previous undercover operations. Officer Alexander was also familiar with Howell from previous investigations. Infantino testified he discussed the plan at least three times with Olson before the arrest occurred. Infantino said Olson knew the plan involved the use of the uniformed officers (one of whom operated in plain clothes), the use of marked and unmarked police cars, and the use of low frequency radios to avoid detection. Infantino testified Olson knew the officers were operating outside their assigned areas. On the sixth night of surveillance, Howell was arrested for driving while intoxicated.

Several months later, Officer Alexander contacted the vice president of the police union, John Bober, and expressed his concerns about the surveillance operation. The complaint was taken to Public Safety Director Keith Lant, who initiated the internal investigation.

During the course of the investigation, Olson was interviewed twice, once by Tom Marfisi, the labor relations director for the City of Omaha, and once by Robert Wadman, the Omaha chief of police. Both Marfisi and Wadman testified Olson denied having knowledge of the plan which led to Howell's arrest. Olson corroborated Marfisi's testimony in this

regard. After the investigation was complete, the investigators determined Olson lied during the investigation and that Olson had been informed from the beginning concerning the surveillance and arrest of Howell.

Following an initial administrative hearing, Olson received a letter from the Omaha personnel director, dated November 7, 1986, informing him that his employment with the City of Omaha was being terminated, following a 15-day suspension without pay. The letter stated the reason for the termination was:

> During your interview you denied any knowledge of the surveillance of John Howell, and subsequent statements by other officers interviewed during the investigation showed that you were, in fact, knowledgeable of the surveillance, the existence of a plan of surveillance of Mr. Howell, the use of unmarked undercover vehicles and the use of uniform personnel to conduct a surveillance.

Olson appealed his termination to the Board. His hearing was consolidated with appeal hearings of Lieutenants Dunning and Infantino. They were being disciplined for their participation in the surveillance and arrest of Howell and for misconduct during the investigation. Olson objected to consolidation of the hearings because Infantino would be a witness against Olson, and results of a polygraph examination taken by Infantino were to be admitted into evidence pursuant to a stipulation between Infantino and the City of Omaha. Olson's objections were overruled, and the hearing was held December 4 through 8, 1986. Following the hearing, the Board unanimously affirmed Olson's dismissal.

Olson filed a petition in error with the Douglas County District Court, basically raising the same issues as are raised before this court. The district court found no error existed in the Board's proceedings and affirmed Olson's suspension and termination. Olson then appealed to this court.

Olson's first assignment of error claims the Board erred in admitting the results of Infantino's polygraph test at the joint hearing. We have held, at least in criminal cases, that due to their unreliability, results of polygraph tests may not be received in evidence. See, *State v. Anderson and Hochstein*, 207 Neb.

51, 296 N.W.2d 440 (1980); *State v. Steinmark*, 195 Neb. 545, 239 N.W.2d 495 (1976). The cases here are civil in nature. In Infantino's case, the test results were received in evidence by stipulation of Infantino and the City of Omaha. Thus, neither Infantino nor the City of Omaha could object to the test results' being admitted in evidence. See *American Oil Co. v. City of Omaha*, 182 Neb. 532, 155 N.W.2d 805 (1968).

We must now determine whether the admission of the test results in Infantino's case was prejudicial to Olson. It should be noted that the results of Infantino's polygraph test were not admitted in evidence in Olson's appeal. The record clearly shows the test results were admitted only in relation to Infantino's hearing. Olson argues that the results of the test, indicating Infantino was truthful in his statements that Olson knew of the plan, buttressed the evidence against Olson, which he claims consisted only of Infantino's testimony. Olson argues the limiting instructions given to Board members by the Board's chairman were insufficient to correct the error caused by admitting the polygraph results.

When the results of Infantino's polygraph test were offered into evidence, the chairman of the Board clearly instructed the Board on the limited admissibility of the evidence, stating the polygraph test results "will be accepted [into] evidence *as it relates to the case of Anthony L. Infantino only,* and will not be considered as evidence in any other matter . . . ." (Emphasis supplied.) The admonition was repeated on two other occasions during the hearing. As a general rule, errors in the admission of evidence may be cured by an instruction from the court. *State v. Klingelhoefer*, 222 Neb. 219, 382 N.W.2d 366 (1986). See *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984). Olson has made no showing, and there is no indication in the record, that the Board's members failed to follow the chairman's admonitions. In view of the chairman's admonitions, we cannot say that the admission of the polygraph test results in Infantino's case was prejudicial to Olson. If there was any error in their admission, it was harmless and cured by the chairman's admonitions. There was more than ample other evidence upon which the Board could determine Infantino's credibility without having to resort to the polygraph tests.

Olson's second assignment of error claims the Board erred in consolidating his appeal with Infantino's appeal when it was known Infantino would place the entire blame for any wrongdoing on Olson and when evidence (the polygraph test results) to be admitted in Infantino's appeal was inadmissible and prejudicial to Olson. We have consistently held motions for separate trial in criminal cases are addressed to the discretion of the trial court, and rulings on such motions will not be reversed unless there is an abuse of discretion. *State v. Montgomery*, 182 Neb. 737, 157 N.W.2d 196 (1968); *State v. Cook*, 182 Neb. 684, 157 N.W.2d 151 (1968). This standard should also be applied to appeals from administrative agency hearings.

In general, the person questioning the joinder of hearings bears the burden of showing the manner in which he was prejudiced by the joinder. *State v. Anderson and Hochstein, supra*. The only prejudice which Olson claims to have occurred as a result of the joinder arose from the introduction of the results of Infantino's polygraph tests. As stated earlier, no prejudice resulted from the admission. Therefore, the Board did not abuse its discretion in joining the appeal hearings of Olson, Infantino, and Dunning.

Olson's final assignment of error claims terminating Olson's employment amounted to excessive punishment. This argument is based on a claim that there was insufficient evidence to support the Board's finding that Olson lied during the internal investigation about his knowledge of the plans to observe and the surveillance of Howell. Olson maintains the only evidence showing he knew of the arrest plan is "incredible." The credibility of witnesses and the weight to be given to the evidence presented are determinations to be made by the administrative agency as the trier of fact; it is not the province of the Supreme Court to resolve conflicts in the evidence. *IBEW Local 244 v. Lincoln Elec. Sys.*, 222 Neb. 550, 385 N.W.2d 433 (1986).

At the hearing, Infantino testified he had at least three meetings with Olson prior to the Howell arrest. In one meeting, Infantino informed Olson of the details of the surveillance plan. In another meeting, held after 4 days of surveillance, Olson told Infantino to continue the surveillance for 2 or 3

more weeks, Infantino testified.

Public Safety Director Lant and Lieutenant Dunning testified it would be standard procedure for Lieutenant Infantino to obtain the affirmance of his superior officer after receiving a request from another division, especially when the request involved an assignment of this magnitude. Finally, there was evidence that around the time of Howell's surveillance, Olson was the next superior officer available in Infantino's chain of command. There is substantial relevant evidence in the record upon which the Board could determine that Olson knew of the arrest plan and lied during the internal police investigation.

We affirm the rulings of the Douglas County District Court and the Omaha Personnel Board, which terminated Olson's employment with the City of Omaha.

AFFIRMED.